The opinion of the court was delivered by
Breaux, J.
In 1883, the “ American Homestead Company ” was organized.
The charter sets forth that the association shall have authority to loan money on security and to sue and be sued; that the shares shall be paid in weekly instalments.
It was agreed that each stockholder, not in arrears, should be entitled to receive a loan of two hundred dollars for each share of stock held by him (less premiums), when the funds in the treasury justified ; the interest on the loans was fixed at the rate of six per cent, per annum, in weekly instalments; fines were provided for nonpayment and forfeiture of stock.
*1121 The stock pledged, whenever it should become equal in value to the indebtedness for which pledged, should be canceled.
It was stipulated, under the terms of the charter, to divide annually the net earned profits, pro rata among the shares of stock not in default.
By act dated December 26, 1887, plaintiff made a loan to the defendant stockholder of five thousand and two hundred dollars, including therein the premium bid for the loan, for which she signed her note — authorized by her husband — to the order of plaintiff, on its face payable six years after date; subject to the terms and conditions of the association; bearing six per cent, per annum from date, and secured as to its payment by a special mortgage and vendor’s lien.
This sale was preceded, about six months previous, by a sale from the defendant to the plaintiff for the sum of three thousand seven hundred and forty-four dollars.
The property being encumbered with mortgages accounts for the delay which elapsed between the two sales.
The object of these two sales was to secure a loan, and the difference in price between the sale by the defendant to the plaintiff and by the plaintiff of the same property to the defendant was the amount of the premium or bonus for the loan.
The conditions were, if the maker of the note, the defendant, paid the interest on the note weekly and the instalments on her stock punctually, the amount was to remain subject to a settlement and payment at the termination of the affairs of the association; but in case the purchaser failed to pay as agreed, the note became due. The plaintiff sues to recover the note and interest, also taxes, insurance premiums paid for her on the property mortgaged, attorney’s fees and costs, and claims a mortgage and vendor’s lien on the property conveyed by it to the defendant.
The defendant has not paid interest and other charges as alleged.
The defendant interposed an exception, and therein alleged that the plaintiff is not a legal corporation, and that it is absolutely without capacity to prosecute this suit in its corporate name.
The defendant also excepted on the ground “if the plaintiff can sue at all that the suit was not authorized by a resolution of the Board of Directors.”
These exceptions were overruled.
*1122 In her answer the defendant denies plaintiff’s allegations, says that plaintiff had no right to forfeit her stock, and that the value should be credited to the note upon which suit is brought; that she was charged interest on the amount of the note of five thousand two hundred dollars, when she should have been charged with interest only on the actual amount received by her, and that the interest actually charged should be credited to the amount actually due by her. She charges usury. She admits the payment of the taxes and insurance by the plaintiff as alleged, and her liability therefor.
She prays that plaintiff’s demand be rejected, with costs, or if any judgment be rendered against her that it should be for the amount received by her on December 26, 1887, with six per cent, interest on that amount only, and that she should be credited with interest illegally paid, with the value of the stock pledged, and that the five per cent, attorney’s fees be limited to the amount actually due.
After the answer had been filed and part of the evidence heard, the defendant interposed the exception of no cause of action. ,
The District Oourt pronounced judgment in favor of the plaintiff for the sum of three thousand seven hundred and forty-four dollars, with six per cent, interest from August 26, 1887, subject to a credit of one thousand five hundred and seventy-one dollars and ninety - six cents, the amount the court decided due to her by the plaintiff on twenty-six shares of her capital stock on March 29, 1892, and subject to a second credit of one hundred and forty-three dollars interest paid on the three thousand seven hundred and forty-four dollars, part of which the court held extinguished the interest due on the last mentioned amount on February 12, 1888, and the remainder was credited and applied as partial payments on the interest due on this date.
Interest and taxes paid were allowed, and five per cent, attorney’s fees on the three thousand seven hundred and forty-four dollars, with conventional mortgage and lien on the property ordered to be sold.
From this judgment the plaintiff appeals.
ILLEGALITY OP THE CORPORATION AND THE WANT OP AUTHORITY TO SUE IN THE NAME OP THE AMERICAN HOMESTEAD COMPANY.
This company was organized under Art. 688 of the Revised Statutes of 1870, in which there is no reference specially made to building *1123 associations. The defendant alleges and argues that it was not the object in adopting the statute to authorize the forming of such companies.
Her counsel correctly concede that if she has been benefited she can not plead the want of capacity in plaintiff to make the loan and contract, as was entered into in this case.
They argue, however, that the act of incorporation being an absolute nullity, because unauthorized by law, the persons thus organized have the right to sue only in their individual names for whatever money be due and not as a corporate body.
We are referred to Art. 446 of the Revised Civil Code as the only article under which plaintiff can proceed. The defendant in her dealings with plaintiff does not charge fraud or error. She treated with it in all respects as being a legal corporation. She became one of its stockholders and sought thereby the benefits it offered to incorporators.
Her taxes were paid by it, premiums of insurance and an amount borrowed, and she fully recognized the legal existence of the corporation. She participated in the annual dividends. She can not be heard to impeach the existence and capacity of the corporation of which she was a member.
The illegalities on which the appellee relies might, perhaps, have been sufficient cause for defence on the part of third persons injuriously affected by such transactions, bub she is estopped from denying the existence of a corporation from which she as a stockholder and on account of her shares has received benefits.
The subscriber is under obligation to perform the promise distinctly made and pay all that is legally exigible. Having voluntarily acted as a corporator and exercised privileges which belong to that capacity, there is reason estopping her from denying the validity of the charter.
The question was decided in Casey vs. Galli, 94 U. S. 680.
The court said: “Where a shareholder of a corporation is called upon to respond to a liability as such, and where a party has contracted with a corporation, and is sued upon the contract, neither is permitted to deny the existence or the legal validity of such corporation. To hold otherwise would be contrary to the plainest principles of reason and of good faith, and involve a mockery of justice. Parties must take the consequences of the position they as *1124 sume. They are estopped to deny the reality of the state of things which they have made appear to exist, and upon which others have been led to rely. Sound ethics require that the apparent in its effect and consequence should be as if it were real, and the law properly so regards it.”
In Eaton et al. vs. Aspinwall, 19 N. Y. Court of Appeals, p. 119: “ A defect in the proceedings to organize a corporation is no defence to a stockholder sued to enforce his personal liability, who has participated in its acts of user as a corporation defacto, and appeared as a shareholder upon its boobs when the debts for which he is sued was contracted.” See also Rice on Ev. 891, 1st Bd.
In Liverpool and London Fire and Life Insurance Company vs. E. C. Hunt, 11 An. 623, a similar principle was laid down, and the court sustained a suit for the restitution of money paid to the defendant, who denied the existence of the company.
In East Pascagoula Hotel Company vs. James West, 13 An. 545, the stockholder was not permitted to set up, by way of defence, any illegality in the charter, or any informality in the organization.
It is true that the case of Workingmen’s Accommodation Bank vs. Converse, 29 An. 370, is not absolutely in line with these and other State and United States decisions upon the subject. Article 446 of the Civil Code is given in this case the effect of a prohibitory law. The authority to stand in judgment is one of the rights to which the defendant consented in becoming a stockholder. She is as much precluded from denying these rights as she is from denying the validity of the charter. The clause of the act of incorporation granting the authority is not in contravention.of laws made for the preservation of public order or good morals.
It is not of such a prohibitory character as that it may not be waived and bind the party waiving.
The principle that “ corporations, unauthorized by law, or by an act of the Legislature, enjoy no public character and can not appear in a court of justice ” is binding and must be given full effect as against third persons, as expressed in the Converse decisions (29 An. 370), but this requirement ceases when parties choose to so contract as to absolutely bind themselves and receive actual benefits from which they can not.be released without its being contrary “to the plainest principles of reason and good faith.”
*1125 In the cited case a secretary and the sureties on his bond were sued.
The relations of a stockholder are nearer to the company in so far as relates to the responsibility for the charter and other acts of organization. In this may be found, sufficient difference in the two cases to maintain the former in its entirety.
Be this as it may, the difference of our views from those expressed in the Converse case is not in any event great. In so far as relates to stockholders, however, the authority of that decision must yield to the number of decisions of the State and the United States Supreme Courts.
AUTHORITY OF THE BOARD OF DIRECTORS TO SUE.
The defendant further excepts on the ground that, if the plaintiff can sue, the institution of this suit was not authorized by a resolution of the board of directors.
The resolution adopted is plain and directs the company to foreclose the mortgage against the defendant.
NO CAUSE OF ACTION.
The amount is alleged as being due by the. wife. The note and mortgage were signed by her as maker and mortgager.
They are due by her.
The petition substantially sets forth the claim.
The defendant admitted, in effect, that whatever amount might be due was due by her.
The exception filed after the answer had been filed could not de-. stroy the effect of the joinder of issue and of the admission of the answer.
THE POINTS CONTROVERTED ON THE MERITS.
The first question for our consideration relates to the forfeiture vel non of defendant’s stock.
In reaching a conclusion we have written a. brief statement of the plan and motive of building associations as we understand the scheme.
They are founded on the theory that it is possible for a given number of persons to pool their savings each month, until the total amounts to a sum sufficient to make it an object, to divide it among the contributors.
*1126 That if each monthly collection be invested the revenue pro tanto will be increased and the time within which to accumulate the. amount of savings contemplated shortened.
The idea being to enable persons to own their homes, the moneyisinvested primarily among those members who choose to take loans for that purpose.
The borrower in paying interest on this loan pays a part to himself; he increases the savings that are partly his.
He thereby anticipates payments and at once gets a house to be paid for in a number of years.
For the reason that there are a number of applicants for these loans they are offered to the highest bidder.
The bid is the discount, the premium — that is, the difference between the par value of the shares and the sum loaned to the borrower.
In forming these organizations there is generally an agreement that, if a member borrows he will be entitled to receive by way of loan or advancement, an amount equal to the par value of the shares he holds less the premium; also one regarding the forfeiture of stock and the privilege of withdrawing from the association without being subject to a forfeiture of the money paid.
This last privilege manifestly is most valuable and one that the defendant has.
Regarding the forfeiture of the sums paid by the defendant the counsel for plaintiff in the last brief direct attention to the fact that plaintiff bases no demand in the prayer of the petition for the stock itself, and that it is not seeking to obtain a decree recognizing the validity of a forfeiture, and that the question of forfeiture is not before the court.
The answer specially controverts plaintiff’s right to forfeit her stock upon different well stated grounds. Plaintiff’s allegation that the stock had been forfeited provoked the issue, although not followed by prayer for a recognition of the validity of the forfeiture.
The question of forfeiture is now inseparable from the issues as presented for solution.
Counsel for the plaintiff in their brief state that should the question of forfeiture be considered, as in this case, they have no hesitancy in declaring most positively that in this particular instance, in view of the facts which were only developed during the trial of the case, they disclaim any intention of obtaining the enforcement of *1127 the forfeiture, and aver that defendant “should receive full credit for the sum of one thousand five hundred and seventy-one dollars and ninety-six cents, which is the aggregate of all paid instalments and declared dividends.”
Questions of plaintiff’s waiver of the forfeiture after attempt had been made to forfeit the stock; of the impossibility of forfeiting stock as attempted, it being stock deposited in pledge with the plaintiff; of deficiency of rules in matter of the enforcement of forfeiture, are disposed of by the admission of plaintiff as made through counsel as above stated, and the consent to give credit for instalments and dividends declared is binding upon it.
THE USURY ALLEGED.
The fact that a member of a building association in taking a loan for the amount of his stock agrees to pay a premium does not render the contract usurious.
The transaction is a loan not entirely free from a partnership venture.
The papers on their face show a loan of a specific amount.
The fact remains that the premium included in the note is not exclusively for the loan of money, for it is charged to the borrower for the privilege of anticipating and at once realizing on his stock. The par value was advanced to the stockholder, less the premium.
There is, however, an appearance of partnership in the transaction, in that the funds are invested in a joint enterprise of members, who will, after deducting all expenses, share the net earnings of the society.
We have Endlich, p. 335, as authority for the statement that in England the later cases admit no question as to the nature of the transaction, bub take it for granted that it is a partnership transaction, and proceed upon this as a legal postulate, that in a bona fide partnership it is not usurious; that it is a dealing with the partnership funds in which a member has an interest in common with his fellow members; that the defendant was interested in the funds when the money was advanced to her and when it was repaid.
The decisions of the courts of this country are not uniform upon the subject. In Massachusetts and New Hampshire the partnership theory obtains. The transaction is not a mere loan. The monthly payments, it was held in the former State, are for the privilege of *1128 becoming an owner of a certain number of shares, and of eventually taking the dividends to which, by the articles of agreement, he would, upon the winding up of the affairs, be entitled. All the associates had the same right. Each one would determine for himself what was the value of the prospective benefit to be enjoyed, and would make his offer for the money to be loaned according to his estimate of the worth of the shares which he was allowed to take.
Since the borrower is to have his full proportion of the benefit of all the gain he can not assert that the lender has reserved to himself a usurious rate of interest. Merrill et al. vs. McIntire, 13 Gray, 157.
The transaction can not be held usurious, because it is a dealing between them as partners in relation to partnership funds in which they had a common interest. Delano vs. Wild et al., 6 Allen, 1.
This caséis cited with approval in the case of Clarkville Building and Loan Association vs. Stephens, 11 C. E. Gr. 351, 26 N. J. Eq. 351.
By the court in that case “ the association in this case (Delano vs. Wild) was unincorporated, but the principle declared, if sound, must govern the rights of the members of an incorporated association.” See also Hoboken Building Association vs. Martin, 2 Beas, 428, 13 N. J. Eq. 428, Franklin Building Association vs. Marsh, 5 Dutch., 29 N. J. Law 225.
In New Hampshire, in another case of an unincorporated company, the court followed the Massachusetts decisions. Trustees Manchester Loan and Fund Association vs. Dunn, 43 N. H. 194.
In Georgia, in Patterson vs. The Albany Building and Loan Association, 63 Georgia, 373, the doctrine of the court is closely akin to those cases before cited by us.
In Indiana the premium was said not to be interest on money, but a contract price for the privilege of borrowing. McLaughlin et al. vs. The Citizens’ Building, Loan and Savings Association, 62 Ind. 264; 64 Ind. 600.
In Reeves vs. Ladies’ Building Association (56 Ark. 335) the syllabus reads:
“ In a loan made by a building association to a shareholder in the usual form there can be no usury, because the rate of interest payable by him is contingent upon the length of time required to pay out his share.”
In Connecticut, Iowa, Ohio ánd in Pennsylvania the courts entertain a contrary view and hold that the conditions of such loans can be enforced only when authorized by statutes.
*1129 ■ The society in -this case having been organized prior to the adoption of the statute authorizing such association, viz.: prior to the adoption of Act 115 of 1888, it remains for us to consider the statute of an unincorporated association.
They are said to be partnerships only, and that their acts are to be ' judged by the law applying to persons.
“In applying this law the courts will allow themselves to be guided by the rules which were adopted by the members in forming the association, whose binding efficaoy, they in joining it, have either formally recognized and subscribed to, or precluded themselves from denying, by their participation in the society’s business and profits under these rules. These are analogous to articles of co-partnership entered into between the different members, and the reciprocal rights and duties arising under them, so far as they are contenanced by law, are protected and enforced by the courts, as in the case of voluntary benefit associations, to which they bear a close resemblance.” Endlich, Building Ass., Sec. 517.
If the conclusion be reached that the contract was not so essentially that of partnership, as to relieve it from the taiht of usury, the rules, principles and policy of the law must be applied in determining the legality of any article and not special statutes, for there were none at the time regulating building associations. The provisions of the law relative to notes being: the owner of any promissory note shall have the right to collect the whole amount, notwithstanding it may include a greater rate of interest than eight per cent, per annum, its principles are not only not violated, but complied with, in capitalizing the premium with the amount of the loan.
In recognizing the effect of the article upon the contract there is nothing of harshness, for the demand of the premium is not extravagant, in view especially of the delays that have elapsed.
There was no oppression, or advantage taken of necessities.
. When the suit was instituted more than four years had elapsed from the date of the loan.
There was from the first an element of uncertainty in the contract, excluding questions of an exclusive loan and usury.
“ When the promise to pay a sum of money above legal interest depends upon a contingency, and not upon the happening of a certain event, the loan is not usurious.” Spain vs. Hamilton, Admr., 1 Wall. 604; Tyler on Usury, p. 98; Lloyd vs. Scott, 4 Pet. 205.
*1130 In the case of the succession of Latchford, 42 An. 537, we maintained the validity of the premium. As in the case at bar there was consideration, other than the mere loan of money.
Entertaining these views it follows that interest is due on the note declared upon from its date.
The prohibition of the statute of 1860 relates only to interest after maturity.
Interest is due at the rate of eight (8) per cent, on the amounts of premiums of insurance and taxes paid. This rate of interest is especially provided for in the by-laws of the plaintiff association.
It is therefore ordered and decreed that the judgment appealed from be amended and increased, and that plaintiff have judgment against defendant for the sum of five thousand and two hundred dollars, with six per cent, interest thereon from the 26th day of August, 1887, until paid, subject to a credit of one thousand five hundred and seventy-one and 96-100 dollars ($1571.96), from March 29, 1892, and subject to a further credit of one hundred and forty-four dollars; that the interest on the amount of taxes and insurance of defendant paid by plaintiff shall be eight per cent per annum from the date of the respective payments, and the fee of attorney is five per cent, upon the principal of the note due by defendant.
As thus amended the judgment is affirmed at appellee’s costs.
Rehearing refused.