410 So.2d 1181 (1982)
SOUTHERN-GULF MARINE CO. NO. 9, INC., Plaintiff-Appellant,
v.
CAMCRAFT, INC., Defendant-Appellee.
No. 8621.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
Writ Denied April 15, 1982.
Andrus & Preis, Vance R. Andrus, Lafayette, for plaintiff-appellant.
Aycock, Horne, Caldwell, Coleman & Duncan, James R. McClelland, Franklin, for defendant-appellee.
Before DOMENGEAUX, DOUCET and LABORDE, JJ.
DOUCET, Judge.
Plaintiff, a corporation chartered under the laws of Cayman, British West Indies, filed suit alleging breach of a contract to *1182 furnish a ship. Defendant responded with a peremptory exception of no cause of action based upon the plaintiff's lack of corporate existence at the time of entering into the contract, and the plaintiff's subsequent incorporation under the laws of a sovereign different than that represented in the contract. The motion was sustained and plaintiff appeals. We reverse.
On December 6, 1978 a "Letter of Agreement" was entered into, which by its terms obligated "Southern-Gulf Marine Co. No. 9, Inc., a company to be formed, to purchase one 156 foot supply vessel from Camcraft, Inc. for a price of $1,350,000.00." The agreement further provided for an anticipated delivery date, authority for Camcraft to begin purchasing components, and stated that a definite set of specifications and a Vessel Construction Contract would be written in the near future. The agreement was signed by Mr. Dudley Bowman, as President of Camcraft, Inc., and by Mr. D. W. Barrett, both individually and as President of Southern-Gulf Marine Co. No. 9, Inc.
Thereafter, on May 30, 1979, the Vessel Construction Contract was executed between Camcraft and Southern-Gulf Marine Co. No. 9, Inc., the latter of which was listed in the preamble as a corporation organized by virtue of the laws of Texas, appearing through D. W. Barrett, its President. The contract, prepared on a form supplied by Camcraft, recited that both parties acknowledge receipt of valuable consideration, then went on to list the mutual promises of Builder (Camcraft) and Owner (Southern-Gulf). Among the conditions which followed on the form contract was one entitled "Shipping Act of 1916", whereby the owner warranted that it was a citizen of the United States within the meaning of the Shipping Act of 1916, as amended (46 U.S.C. § 835) and that provisions of said act restricting transfer of ownership are applicable. The agreement further listed causes for default and the effect thereof. Another provision afforded Builder the right to assign its interest provided such would not violate any law of the United States.
Subsequently Mr. D. W. Barrett, President of Southern-Gulf Marine Co. No. 9, Inc., wrote to Mr. Bowman in a letter dated February 21, 1980, informing him that his organization was incorporated in the Cayman Islands of British West Indies on February 15, 1980. Mr. Barrett explained that such incorporation was done to make the vessel's use in foreign commerce more economical. As President and Managing Director, he further informed Camcraft of the Board of Directors' resolution to ratify, confirm, and adopt the aforesaid agreements. The letter was signed by Mr. Barrett individually and as President. Mr. Bowman signed a written acceptance and agreement to the letter on February 22, 1980.[1]
Defendant subsequently defaulted on its obligation and this suit followed, wherein plaintiff sought to sequester the vessel involved and demanded specific performance and damages occasioned by defendant's failure to timely deliver the vessel. The defendant then sought to escape liability via a peremptory exception of no cause of action based upon the legal status of plaintiff.
The trial judge, in his Reasons for Judgment, reasoned that a contract requires two parties, and as plaintiff was not incorporated as of the date of the Vessel Construction Contract, there was no contract. He further reasoned that the purported ratification by Southern-Gulf Marine Co. No. 9, Inc., as evidenced by the letter of February 21, 1980, was ineffective because Southern-Gulf Marine Co. No. 9, Inc. never appeared as a Texas corporation and approved of any substitution of parties or assignment. The trial judge also rejected plaintiff's claim that D. W. Barrett could enforce the contract individually.
*1183 On appeal, the plaintiff assigns as error the following trial court actions: 1) Finding that the defendant had not agreed with the plaintiff to be bound to the May 30, 1979 Vessel Construction Contract, by virtue of the letter dated February 21, 1980; 2) Finding that the May 30, 1979 Vessel Construction Contract was no contract at all; 3) Failure to hold the defendant estopped to deny the corporate existence of Southern-Gulf Marine Co. No. 9, Inc., a Texas corporation; and 4) Failure to consider the February 21, 1980 letter as evidence of a valid assignment if the trial court was correct in stating that defendant did not consent to the terms set out in the letter. Although we find merit in the argument that D. W. Barrett could enforce the contract individually, this was not urged on appeal, and thus is considered abandoned.
We address ourselves first to whether the defendant should be estopped from asserting the plaintiff's lack of corporate capacity at the time the Vessel Construction Contract was executed after dealing with the plaintiff as a corporation. We believe the defendant, having given its promise to construct the vessel, should not be permitted to escape performance by raising an issue as to the character of the organization to which it is obligated, unless its substantial rights might thereby be affected. As was stated in Latiolais v. Citizens Bank, 33 La.Ann. 1444 (1881), overruled on other grounds in General Motors Acceptance Corp. v. Anzelmo, 222 La. 1019, 64 So.2d 417, 418-419 (1953).
"It is settled, by an overwhelming array of indisputable precedents, that, as a rule, one who contracts with what he acknowledges to be and treats as a corporation, incurring obligations in its favor, is estopped from denying its corporate existence, particularly when the obligations are sought to be enforced. It is right that it should be so. If a party have no other objection to oppose to the enforcement of the contract than that the obligee is incompetent to sue, for reasons anterior to his contract, or last acknowledgement, he should not be permitted to escape liability. The case would be different where the incompetency is the result of something happening subsequent to the contract, or last acknowledgement of existence and capacity. It is a familiar principle that one cannot be permitted to play fast and loose, so as to take advantage of his own unfair vacillations."
The above rule has been repeatedly applied in this and other jurisdictions. Blanc v. Germania National Bank, 114 La. 739, 38 So. 537 (1905); American Homestead Co. v. Linigan, 46 La.Ann. 1118, 15 So. 369 (1893); New Prytania Market Assoc. v. Beoubay, 185 So. 531 (La.App.Orl.1939); Painting Systems, Inc. v. Popkins, 376 So.2d 584 (La. App. 4th Cir. 1979); Casey v. Galli, 94 U.S. 673, 24 L.Ed. 168 (1877); Ingle System Co. v. Norris & Hall, 132 Tenn. 472, 178 S.W. 1113; Toledo Computing Scale Co. v. Young, 16 Idaho 187, 101 P. 257; Bremen Foundry & Machine Works v. Boswell, 22 Ga.App. 434, 96 S.E. 182; Grande Ronde Lumber Co. v. Cotton, 12 Colo.App. 375, 55 P. 610.
The rule was stated in Casey v. Galli, 94 U.S. 673, 680, 24 L.Ed. 168 (1877) as follows:
"Where a party has contracted with a corporation, and is sued upon the contract, neither is permitted to deny the existence, or the legal validity of such corporation. To hold otherwise would be contrary to the plainest principles of reason and of good faith, and involve a mockery of justice."
The record discloses nothing indicating that the substantial rights of defendant were affected by the plaintiff's de facto status. The plaintiff relied upon the contract and secured financing. The defendant likewise relied on the contract and began construction of the vessel. We have no doubts that defendant would assert that plaintiff and D. W. Barrett were liable on the contract had they defaulted and enforcement was advantageous, but defendants refuse to recognize any rights they may have therein. In all likelihood, the true state of affairs is as represented by plaintiff's counsel: the vessel appreciated in value above the contract price between the *1184 time of the contract and the agreed delivery date. We hold the defendant estopped to deny the corporate existence of plaintiff in this regard. Such a result is in accord with construction of contracts so as to give them effect, LSA-C.C. Art. 1951, and the rule of construction which adapts an interpretation in accordance with justice and fair dealing with doubts resolved against the seller. Haymon v. Holliday, 405 So.2d 1304 (La.App. 3rd Cir. 1981).
The question remains whether defendant should be able to inject into the case the fact that plaintiff subsequently did incorporate in the Cayman Islands rather than in Texas, as originally represented. Paragraph 25 of the contract provides that an assignment or transfer shall not violate the Shipping Act of 1916 which prohibits transfer in the event of war or national emergency. Defendant apparently had no objections to the plaintiff's altered status, as a Cayman rather than de facto corporation, at the time the letter of February 21, 1980 was accepted and agreed to. And we all know that no war or national emergency existed. Thus the evidence indicates that the plaintiff's legal status is not germane to any cause for the contract and as such should not be grounds for avoidance of the contract. However, as the trial judge did not reach this consideration, we reserve unto defendant, upon remand, the right to raise the issue of the relevance of Cayman incorporation rather than Texan. It should be noted that defendant has not questioned plaintiff's right to do business within Louisiana, as in Outdoor Electric Advertising, Inc. v. Saurage, 207 La. 344, 21 So.2d 375 (1945); and J. R. Watkins Co. v. Floyd, 119 So.2d 164 (La.App. 1st Cir. 1960).
Because of the result reached we need not address appellant's additional assignments of error.
The judgment appealed from is reversed and remanded to the trial court for further consideration consistent with the views herein. All costs taxed to appellee.
REVERSED AND REMANDED.
NOTES
[1] The last paragraph in the body of the letter of February 21, 1980, requested Mr. Bowman to acknowledge the terms therein by signing the below form and returning a duplicate thereof to plaintiff.
"ACCEPTED AND AGREED THIS _____
DAY OF FEBRUARY, 1980.
 CAMCRAFT, INC.
 BY: _______________________
 Dudley E. Bowman, President"