No. 12,385.

C. BRENT RICHARD VS. SOUTHERN BUILDING AND LOAN ASSOCIATION.

The contract by which a party becomes the owner of shares of the stock of a building and loan association to be paid for in instalments running through a long series of years, and borrows from the association on his stock, the interest on the loan being 6 per cent. per annum, is not to be treated as a usurious loan, the payments supposed to constitute the usury, by the terms of the contract being made on the stock debt, not the loan.

APPEAL from the Twelfth Judicial District Court for the Parish of Calcasieu. *Read, J.*

*Edward L. Wells* for Plaintiff, Appellee.

*Williams & Sugar* and *Carroll & Carroll* for Defendant, Appellant.

Argued and submitted February 18, 1897.
Opinion handed down March 15, 1897.

The opinion of the court was delivered by

MILLER, J.   The defendant appeals from the judgment maintaining in part the plaintiff's injunction to restrain the sale of his property under the executory process obtained by defendant on the plaintiff's note, secured by mortgage.

The case involves the contract of the plaintiff, a shareholder in the defendant corporation, and a borrower from it.   As we gather from the record the outline of the character of these building and loan associations, the party seeking a loan becomes the owner of the shares of the association to an amount double the amount of the desired loan.   In this case the loan sought was two thousand dollars, and the number of shares of which plaintiff became the owner was forty shares of one hundred dollars each, one of which, in the argument it is stated, he carries for the benefit of the company, and the other for his own.   To secure a mortgage or vendor's lien for the note of the borrower, which is for an amount equal to the number of shares, in this case four thousand dollars, the borrower and shareholder transfers his property to the association, which transfers it back to him for his note corresponding with the amount.

31

of the shares, and thus besides the special mortgage the association gets the vendor's lien to secure the note. The borrower pays nothing for his stock at the time, but is required to pay a moderate amount, in this case seventy cents per month, on each share, giving a long period to pay for the stock, and as we understand it, the stockholder is to be credited also with the dividends anticipated from the profits of the association, which, of course, if realized, will lighten the payments and shorten the maturity of the stock. On the loan he makes no payments, except the interest at six per cent. Whenever the stock payments and dividends thereon equal the value of his shares, the stock and the loan are canceled. Failure to make the payments gives the right to forfeit the stock and makes the debt exigible, but when demanded before payment by the stock instalments, the stock is allowed a credit (in this case of one thousand six hundred and four dollars) in consideration of the liquidation of the loan earlier than contemplated, owing to the default of the share-holder in the payments required of him by the contract. In this case the shareholder defaulted after twenty-nine payments on his stock, and is in arrears for interest. He is credited in the petition for arrears of interest, and also with the sixteen hundred and four dol-lars, called the unearned premium, for the abridged period of the loan occasioned by his default, and in the briefs it is brought to our notice that his stock not forfeited will entitle him to its value, if claimed by him, and if not claimed, but kept in force by the required payments, will secure for him the benefits of a shareholder.

The petition of the association claimed the amount of the note with the stipulated interest from July 1, 1895, to which date interest is paid. The petition of plaintiff for the injunction alleged that he bor-rowed only two thousand dollars; was entitled to credit for two thous-and dollars on the note; to the credit besides for his payment on the stock; admits an indebtedness of twelve hundred and eighty dollars, and claims damages for the dissolution of the writ of seizure and sale. The judgment of the lower court treated the transaction as a loan, maintained the injunction to the extent of six hundred and eighty-six dollars and fifty cents, allowing all payments on the stock as credit, and this appeal by defendant followed.

There is a motion to dismiss the appeal on the ground that the answer admitting an indebtedness of twelve hundred and eighty dollars, and the amount claimed in the petition being two thousand

three hundred and ninety-six dollars that the controversy only as to the difference, is below the amonnt necessary to give this court jurisdiction. We find no brief in support of the motion and presume it is waived. The plaintiff's claim is for a sum in excess of our jurisdiction, and we see no reason to dismiss the appeal.

It is urged by the defendant that the transaction was a mere loan to him of two thousand dollars; that the excess of his note over that amount is not to be deemed a premium on the loan, hence is not demandable, and that all the payments, except those for interest, are to be imputed on the notes. This theory was adopted by the lower court. It is difficult to reconcile this defence with the contract in the record. A mere loan of two thousand dollars would not be linked with the transfer of forty shares of stock to the borrower, imposing the burden on him of payment, as well as entitling him to the benefits of a shareholder; nor would a single loan be accomplished with the stipulation that payment on the stock, with the dividends accruing on it, would cancel stock and loan. The plaintiff made the application for the loan with the distinct statement it was on his shares; that all payments by him, other than interest, were to be imputed to the stock; and the method of payment of loan and stock, and that default of these payments would mature the note, were well defined in the contract. The plaintiff received the two thousand dollars; has had the benefit of it at six per cent., along with the rights conferred on him as a shareholder. With these obligations imp sed and the rights secured to him under the contract, he has evinced his own appreciation of the contract, and paid for a period the interest on the loan and the required payments on the stock. We can not, therefore, without disregarding the contract placed before us and the plaintiff's interpretation of it manifested by his acts, treat it as a mere loan on usurious interest, as alleged in the answer and contended in argument.

These building and loan contracts have been frequently considered by the courts of other States; the stipulations of the agreement between the association and the shareholders and borrower have been subject to careful analysis, and the mutual benefit of the shareholder and borrower, as well as the association, proposed to be secured has been exhibited as the prominent feature of the contract. With some contrariety of views, our appreciation is that the tendency of the decisions have been to sustain the contracts. Associations of this

character are viewed as formed to secure to the shareholders the privilege of borrowing on their stock; participating in the profits that may be derived, and at the same time extinguishing their obligations to the association by paying interest on the loans and by accruing dividends and small monthly payments on the stock. In a case before us recently the decisions of other States were reviewed, and we upheld the validity of the premium the shareholder was required to pay. American Homestead Company vs. Linigan, 46 An. 1119.

In accordance with the charter of the association the plaintiff is allowed a voluntary credit of sixteen hundred and four dollars. We are not enabled to appreciate on what basis this amount is adjusted, but no argument is addressed to us to show the credit should be greater. The plaintiff, treating his obligations as that of a borrower, insists his stock payments should be imputed on his loan. But under his contract the payments were on his stock, of which he remains owner with the right to obtain its withdrawal value. We find no basis to give the credits he claims.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and annulled, and it is now ordered, adjudged and decreed that plaintiff's injunction be dissolved; that defendant's writ of seizure and sale be reinstated, maintained of full force and executed, and that plaintiff pay costs.