No. 12,835.

MRS. GEO. C. TERRY AND HUSBAND VS. MRS. LIZZIE S. GILKESON, EXECUTRIX, ET ALS.

In case the form of a sale is resorted to for the purpose of obtaining the apparent security of a special mortgage and vendor's lien, it will be treated as a mortgage pure and simple in an action by the wife who enjoins its execution in executory proceedings on the charge of simulation and illegality as an effort to bind her paraphernal property for the individual indebtedness of her husband. And, that, being so considered, same draws to it all the legal consequences which attend a mortgage in fact which has been executed for like purposes.

APPEAL from the Fifth Judicial District Court for the Parish of Ouachita. *Potts, J.*

.*A. A. Gunby* for Plaintiff, Appellant.

*Munholland & Munholland* for Defendant and Appellant.

Argued and submitted May 31, 1898.
Opinion handed down June 24, 1898.

The opinion of the court was delivered by

WATKINS, J. In December of 1897 defendant obtained an order of seizure and sale in the foreclosure of a special mortgage of three thousand dollars and interest on the plaintiff's 'Lyndhurst' plantation in the parish of Ouachita, and the latter enjoined said executory proceedings on the ground, principally, that the note and mortgage were executed exclusively for the purpose of securing a debt her husband that was due to John M. Gilkeson, of whom the defendant is executrix.

On the trial the plaintiff's injunction was perpetuated and the mortgage was annulled and its registry ordered canceled and erased from the record, on the ground that same was given as security for the debt of her husband, in violation of a prohibitory law of Louisiana, and therefore void.

It further ordered and decreed that there be judgment in favor of the defendant in reconvention for the amount of certain taxes which J. M. Gilkeson had paid upon the property mortgaged.

Each of the parties prosecuted an appeal from so much of the judgment as was considered prejudicial to them, respectively.

The theory of the plaintiff is that she is owner of the property in question as her own separate paraphernal property, under her administration and control, as an inheritance from her deceased father, who was a citizen and resident of the State of Louisiana, where he died possessed of said property; and that she being a citizen of this State inherited same at her father's death, and was there married to her husband, Col. Ira C. Terry, of St. Louis, Mo., at which place their matrimonial domicile was thereafter established.

. 66

That "on the 15th of December, 1894, in order to secure a debt of her husband to John M. Gilkeson, of St. Louis, (she) made a pretended sale of said property to J. M. Gilkeson for the pretended price of ten thousand dollars in cash in hand paid, when in fact no price was paid whatever, and no sale was made except on paper. That on the same day said J. M. Gilkeson pretended to sell and convey said property back to (her) for the price of ten thousand dollars, acknowledging the receipt of seven thousand dollars in cash, when in fact no cash was paid, and for the balance of said pretended price (she) executed a note for three thousand dollars due January 1, 1898, and three notes of two hundred and forty dollars, each, for the interest on said three thousand dollar note;" and that to secure the payment of those several notes, the aforesaid mortgage was given.

She further represents that these transfers were simply intended to operate a mortgage on her separate property to secure a debt of her husband; and that she received no part of the consideration for said mortgage note and interest notes; and that same did not in any manner inure to the benefit of her separate property or estate.

That said act of mortgage, disguised as a sale, is and was in plain and direct contravention of a prohibitory law of the State of Louisiana, and, therefore, null and void absolutely.

That she was not examined by a judge and none of the forms of law for binding the real property of a married woman were observed; and that the pretended sale of her property was a simulation and disguise for the mortgage aforesaid.

Apprehending that the defendant intended and would attempt to seize her property in the attempted enforcement of said mortgage, plaintiff prayed for and obtained an injunction—she having at that time already obtained the order of seizure and sale.

Her prayer conforms to her allegations.

The defendant tendered an exception of no cause of action, and on the same filed an extended answer, the principal points of which are the following, viz.:

That the defendant admits that the act of sale from plaintiff to Gilkeson was executed before a notary and Louisiana commissioner of deeds in St. Louis, Missouri, and that the property thereby conveyed and mortgaged "was inherited by the plaintiff from her parents as alleged, and as such was her paraphernal property."

But the averment is made that no law of the State "prohibits a

married woman from alienating her paraphernal immovables, nor from giving a vendor's priviege on same to a person acting in good faith, for a valuable consideration accruing to her separate benefit."

That said deed, mortgage and note evidenced real, serious and *bona fide* transactions, and the note and mortgage are binding on the property of the plaintiff.

That a part of the three thousand dollar note had for its consideration an individual note of the plaintiff for fifteen hundred dollars, which she executed in favor of Gilkeson-Sloss Commission Company on the first of February, 1895, which was secured by a special mortgage contemporaneous therewith.

That the plaintiff "was duly authorized to make the mortgage (enjoined) by examination before a competent judge, and that a certificate was duly issued from Hon. R. W. Richardson, then judge of the Fifth District Court of the parish of Ouachita, and that said mortgage was duly executed and signed by Lewis D. Allen, Jr., who bore an authenticated special power of attorney from the plaintiff to execute the same," etc.

The further averment is made that one hundred and sixty-nine dollars and eighty-nine cents of the three thousand dollars was paid to James G. Trimble, in the redemption of the property mortgaged, from the tax sale, and which she had permitted to go to sale for the non-payment of delinquent taxes, on July 28, 1894—it having been redeemed on January 10, 1896.

That the remainder of the three thousand dollars was paid "to the plaintiff or her authorized agent and husband, I. C. Terry, who was *acting as such* from 1880 to 1897, on drafts and acceptances from time to time; and that said sums were expended in payment for improvements on the said plantation of the plaintiff, and in the expense of making crops thereon.

"That at the time of these transactions, as at the present time, the plaintiff was leasing and conducting her said Lyndhurst plantation for her own separate account and benefit."

Then follows the allegation of the wrongful issuance of the writ of injunction and the consequent damages—aggregating eight hundred dollars.

Assuming the character of plaintiff in reconvention, the defendant claims that the plaintiff is indebted to her in the further sum of one hundred and forty-four dollars and ten cents, with interest from

the 6th of June, 1896, for taxes paid by J. M. Gilkeson on the property of the plaintiff for the year 1896, "as more fully appears by a draft, drawn by her husband as agent, and tax receipt from D. A. Johnson, sheriff and tax collector of the parish of Ouachita," etc.

Then follow the general averments, viz.:

" That the mortgage and vendor's lien be declared valid and enforced and that same be declared of full force and effect and binding and executory on plaintiff's property."

Her prayer is in conformity with the foregoing allegations, and in addition thereto she makes the following special prayer, viz.:

" Respondent prays in the alternative, that if for any cause the special mortgage should be annulled and the injunction sustained, that respondent may have personal judgment against the plaintiff in reconvention for and in the full sum of three thousand eight hundred and sixty-four dollars and ten cents, with eight per cent. per annum interest," etc.,   *   *   *   or such portion of such aggregate amount as is proved to have inured to plaintiff's separate and exclusive benefit and to the improvement of her paraphernal property."

The effect of the averments of the defendants taken as judicial admissions of the facts involved and necessary to a proper decision of this case are the following, viz.:

1. The act of sale from the plaintiff to J. M. Gilkeson was executed before a notary and Louisiana commissioner of deeds in St. Louis, Missouri.

2. That the property thereby conveyed was separate paraphernal property of the wife which came to her as an inheritance from her parents as alleged in the plaintiff's petition.

3. That a part of the consideration of the three thousand dollar note, which is the subject of the executory proceedings which are enjoined, was a note for one thousand five hundred dollars which plaintiff had executed on the 1st of February, 1895, in favor of Gilkeson-Sloss Commission Company; that one hundred and sixty-nine dollars and eighty-nine cents was the amount J. M. Gilkeson had expended in the redemption of her property from tax sale, and that the remainder of that sum was paid to the plaintiff through her husband, who was *acting* as her general agent "on drafts and acceptances from time to time," and which sums " were expended in payment for improvements on the plaintiff's plantation and in the expense of making crops on the same."

4. That plaintiff was duly authorized to make the mortgage enjoined by examination before Judge R. W. Richardson of the Fifth Judicial District, who gave a proper certificate of authorization therefor.

5. That "said mortgage was duly executed" and signed by an agent who had been specially authorized for that purpose.

6. "That at the time of these transactions, as at the present time, the plaintiff was leasing and conducting her said Lyndhurst plantation for her own separate account and benefit."

These admissions, taken collectively, plainly imply and import that the plaintiff was the owner of this Louisiana plantation in her own separate paraphernal right; that the proceedings evidenced or were intended to evidence a mortgage upon this separate property ostensibly for three thousand dollars, which she owned, but which amount was chiefly made up of drafts and acceptances for her husband and amounts alleged to have been expended in improvements of plaintiff's plantation and expenses in making crops on her plantation.

In other words, the answer, in effect, admits that there was no consideration for the *sale* from plaintiff to Gilkeson which was executed in St. Louis, but that it was only a means resorted to of placing the property in his hands so that he could subsequently reconvey it to her and thus obtain a conventional mortgage and vendor's lien that could be enforced by executory proceedings and sale. This idea is further reinforced by the fact that an application was made to a Louisiana judge to grant a certificate of authorization for that purpose, and the judge signed a certificate, notwithstanding it possessed the form of a sale with mortgage retained therein. But that certificate was unavailing for any necessary purpose for the reason that it is made a condition precedent that the judge must examine the wife at chambers, separate and apart from the husband, "touching the objects for which the money is to be borrowed, *or the debt to be contracted.*" R. C. C. 127.

And that article further distinctly provides that "if he shall ascertain either one or the other are for her husband's debts, or for his separate benefit or advantage," he shall not grant his certificate. *Ibid.* Berwick, Wife, vs. Sheriff, 49 An. 201.

The admissions in the answer clearly show that the wife was never examined by the judge who granted the certificate; and further,

that had she been examined by the judge it would inevitably have been made to appear that the three thousand dollars was principally made up of drafts and acceptances of the husband while *acting* as general agent of his wife.

Not only so, but that notwithstanding the plaintiff is admitted to have been at the time in possession of her property, leasing same to tenants, and conducting her own business for herself, that a large part of the three thousand dollars was "expended in payment for improvements on the plantation of the plaintiff and in the *expense of making crops on the same.*"

This statement is very confusing, to say the least of it.

If the plaintiff was operating the plantation for herself, on her own account, and leasing it, it ought reasonably to have been sufficiently remunerative to have kept improvements paid for, without incurring an additional debt therefor; and that will be taken for granted in the absence of countervailing evidence.

If the plaintiff was administering her own plantation, leasing it, then she had no occasion for the services of an agent in the premises, general or special.

If the plaintiff was leasing her plantation she evidently had no occasion for the expenditure of these large sums of money " in the expense of making crops thereon."

From the quotation we have made from the defendant's prayer, demanding personal judgment against the plaintiff, this proceeding has been converted from one *via executiva* to one *via ordinaria*, and one of the consequences of this change is that the defendant becomes a plaintiff *pro hac vice*.

Under these circumstances, if she was not otherwise—which we are not prepared to concede—the executrix carries the burden of establishing the fact, that the debt demanded inured to the plaintiff's separate and paraphernal benefit, or that of her paraphernal property; because the requirements of the Code, with reference to their private examination by the judge, were not attempted to have been complied with.

The proof clearly shows that plaintiff's husband paid the taxes claimed in the answer, as well as the redemption price of the land. The receipts were taken in his name; and the plaintiff swears they were so paid. If Gilkeson let Colonel Terry have the money, that circumstance does not constitute the plaintiff his debtor. The proof

shows that he owned a plantation in the parish of Ouachita in the immediate vicinity of that of his wife. He therefore had means of his own at his command. And the proof further shows that he was the owner of an interest in the tract of land that was redeemed from the tax sale.

With regard to the note and mortgage of one thousand five hundred dollars which figures in these proceedings, the emphatic statement of the plaintiff as a witness, frequently repeated, is that that mortgage was given to secure an obligation of her husband to Gilkeson-Sloss Commission Company, "for moneys advanced to *him* to buy cotton with;" and that her husband subsequently paid the debt, but, for some reason, did not get possession of the note. In confirmation of that statement she annexed the contract between them to her testimony. Her husband was not permitted to testify.

We are of opinion that the whole case is with the plaintiff.

Defendant's counsel have made " the best out of a bad bargain."

Entertaining these views, the judgment appealed from must be amended in favor of the plaintiff.

It is therefore ordered and decreed that the judgment appealed from be so amended as to perpetuate plaintiff's injunction in its entirety and to reject the defendant's demands for taxes paid, and reimbursement for moneys expended in redemption of land sold for taxes.

And that as thus amended the judgment be affirmed; and that the defendant be adjudged to pay all costs of both courts.