Statement of the Case.
MONROE, J.
Plaintiff sues for the recovery of a balance alleged to be due on a promissory note executed by defendant, and for *885 recognition of the vendor’s lien, together with a mortgage and pledge by which the same purports to be secured, as also for the reimbursement of money expended in the payment of taxes on the property alleged to have been mortgaged.
The defendant answers that the note sued on, though identified with a notarial act, as representing the purchase price of immovable property sold to her by the plaintiff, was in reality given in consideration of a loan of money obtained by her from the plaintiff at the instance and for the benefit of her husband, and for which slie is not liable. Further answering, she alleges that if Act No. 115, p. 177, of 1888, be relied on, then that said act is unconstitutional, for this, to wit: (1) That it contains more than one object; (2) that it is unequal in its operation; 18) that it grants special privileges to homestead associations, which are not enjoyed by other corporations or by individuals. And she further alleges that plaintiff has not complied with the provisions of said act. There was judgment in the district court in favor of the plaintiff as prayed for (i. e., for $949.85, as the balance due on the note, with attorney’s fees and interest, and for $07.37 on account of taxes paid, with interest); the whole, with recognition of the vendor’s lien and mortgage on the immovable property described in the petition, and with recognition of the pledge of certain shares of stock in the plaintiff company.
It appears from the evidence that in July, 1887, the plaintiff sold to the defendant, a married woman administering a paraphernal estate, who was also joined and authorized by her husband, and who, for the purposes of the transaction, became a subscriber to its stock, the immovable property here in question, for a price payable in installments maturing during a series of years, and secured, as is usual in such cases, by vendor’s lien and mortgage on the property, and by pledge of her stock; that the price so agreed on was eventually paid; and that thereafter, to wit, in May, 1896, the defendant applied for a loan of $2,000, to secure which the property in question was transferred to the plaintiff, and by the plaintiff retransferred to her, subject to mortgage and vendor’s privilege, to which was added the additional security of 10 shares of stock, including 5 shares for which the defendant had originally subscribed, and for the other 5 shares of which she subscribed for the purpose of the transaction—the act in question containing the usual clauses with regard to taxes, insurance, and attorney’s fees. It further appears that during the several years following the date of this transaction the amount of the principal debt thus incurred by the defendant was reduced, by the payment of installments due upon her stock, by a sum aggregating $1,050.15, but that for more than six months prior to April 12, 1902, she had defaulted in such payments, and that, agreeably to the terms of her contract, the balance of said debt, represented by the note sued on, together with attorney’s fees, as stipulated, and the amounts disbursed by the plaintiff for the preservation of the property, became at once due and exigible.
The defendant testifies that she was induced to borrow the money in question by the importunities of her husband, and in order to secure peace, and that it inured to his benefit. She also testifies, however, that she made no declaration to that effect when she executed the acts of sale and purchase and the note, and subscribed to the stock, upon the basis of which the money was obtained. Nor does it appear that the plaintiff was otherwise informed of the disposition that she intended to make of the money so obtained.
Opinion.
Assuming to proceed upon the basis of the pleadings and facts as thus stated, the counsel for the defendant argue their case by propounding and answering, in their own way, certain questions, which will now be considered seriatim, to wit:
1. “Does a sale for cash, and a resale on terms of credit-^-both acts being passed at one and the same time—constitute a valid sale, so as to give rise to a vendor’s privilege to the holder of the note for the unpaid purchase price; it not being in the hands of an innocent third person?”
Premising by saying that it does not appear that the sale and resale in this case, though made on the same day, were made at one and the same time, the answer to this *887 question may toe given in the language of Act No. 115, p. 178, of 1888, relating to homestead associations, which, so far as it need he quoted, reads:
“Sec. 4. * * * That it shall toe lawful for such associations to purchase from any shareholder, or other person, any real estate, improved or unimproved, and to sell the same, either in the same condition or after improving, repairing, or building on the same, to any shareholder or other person, provided * * * that, in ease such association shall purchase property from any person and shall afterwards sell the same property to the same person, then, such association shall have the vendor’s lien and privilege on the property so sold for the security of. the payment of the money due by such person; that such associations are authorized and empowered to contract and agree with any person to purchase from such person any property, and, afterwards, to sell the same property to the same person, even though said agreements may be made at one and the same time; and such contract and arrangement shall not be considered or dealt with as a loan, but as a sale to the association and, then, a resale to the person from whom the association acquired it, and such association, to secure the amount due by such person, shall have all the rights, privileges and securities which are now accorded by law to the vendor of property.”
Apparently for the purpose of showing that this question has been otherwise answered, the.learned counsel refer us to the case of Homestead Co. v. Linigan, 46 La. Ann. 1118, 15 South. 369; Richard v. Building & Loan Association, 49 La. Ann. 483, 21 South. 643; Terry v. Gilkeson, 50 La. Ann. 1040, 24 South. 128; Davis v. Kendall, 50 La. Ann. 1121, 24 South. 264. But the purpose mentioned is not subserved by those authorities. On the contrary, in Homestead Co. v. Linigan a transaction very similar to the one now under consideration was fully sustained; the questions whether a stockholder to whom a loan had been made could be heard to challenge the capacity of the corporation; whether the loan, as made, was tainted with usury; and whether installments on stock subscriptions already paid were forfeited to the company by default in the payment of those subsequently accruing --being decided in the negative. In Richard v. Building & Loan Association, the judgment of the district court maintaining an injunction against an order of seizure and sale obtained by the association on the ground that the transaction was a mere loan, tainted with usury, was reversed by this court.
And the cases of Terry v. Gilkeson and Davis v. Kendall did not arise out of transactions with homestead associations.
In connection with the legal propositions here presented, the counsel for the defendant argue that it is not shown that she received the proceeds of the loan (i. e., the proceeds of the sale made by her to the association); “the only evidence [they say] being that a cheek for $1,700, payable to the order of Emile J. Barnett, was given to Barnett, the notary. There is no evidence that she [defendant], or any person other than Barnett, received the money.” The defendant, however, alleges in her answer that the possession of the money “was secured by her said husband, and used by him for his own purposes”; and it is abundantly shown and admitted that the defendant was represented by her husband in her dealings with the plaintiff, save in the1 actual execution of the acts of sale and resale, and that in this matter she was authorized by him. Under these circumstances, in the absence of any charge of fraud, and in view of the provisions of Civ. Gode, art. 2237, of Act No. 115, p. 177, of 1888, and also of Act No. 74, p. 88, of 1894, her acknowledgment of the receipt of the price, in the sale made by her, and of the title of the vendor, in the resale to her, are conclusive.
2. “Can a corporation obtain the benefits of Act No. 115, p. 177, of 1888, when it has not complied with its requirements?”
In her supplemental answer, defendant alleges “that in the event of this honorable court’s concluding that Act No. 115, p. 177, of 1888, is constitutional, then * * * respondent avers that plaintiff has not complied with its provisions, and cannot obtain any of its benefits until its provisions are complied with.”
No evidence was offered to sustain this very vague averment. In the brief which has been filed on behalf of defendant, it is said that the plaintiff has not exacted a bond of $1,000 from its secretary and treasurer. *889 It is not, however, suggested that the defendant, who has dealt with the plaintiff for 15 years without complaint on. that account, has thereby sustained any loss. Moreover, as we have stated, the failure thus suggested in the brief is not alleged in the pleadings, and is not proved.
3. “Does Act No. 115, p. 177, of 1888, apply to contracts, the object of which is not to provide a loan for the borrowing member, but merely to secure a repayment of the loan, as in this ease?”
According to the language of its charter, one of the purposes for which the plaintiff is incorporated is the lending of money upon mortgage or other security. By the act referred to, it is authorized to buy property for cash and resell it to its vendor on terms of credit; and whilst, as a result, the original owner obtains an amount of money for the repayment of which it might be said that the property stands as security, the statute declares that the transactions shall be ■considered sales, and the parties thereto must be presumed to contract with reference to the law.
4. In the brief of defendant’s counsel, it is said that “Act No. 115, p. 177, of 1888, is repugnant to the Constitution, in this: That it is unequal in its operation. It grants privileges to homestead associations not enjoyed by other corporations or individuals. That it is a local and special law, such as is denounced by the Constitution of Louisiana of 1879 and 1898.”
In the answer filed on behalf of defendant, there is no charge that the act referred to is local or special, and the other charges of un■eonstitutionality are stated as follows, to wit:
“(2) Because the said act is unequal in its •operation, in violation of the provisions of the Constitution of the United States. (3) Because said act grants special privileges to homestead associations, which are not enjoyed by individuals and other corporations.”
Dealing with these defenses as they are set up in the pleadings, it would appear that they are both intended to be founded upon ■some provision of the Constitution of the United States—presumably, on the last clause •of section 1 of the fourteenth amendment, which declares that no state shall “deny to any person within its jurisdiction the equal protection of its laws.” We are, however, unable to discover in what way the equal protection of the law has been denied to the defendant by a statute which, in regulating the business of homestead associations, and declaring that transactions with them purporting to be sales shall be so considered, is applicable to all persons who may choose to form such associations, or to engage in such transactions with them. “Equal protection of the laws,” says the Supreme Court of the United States, “is not denied to any person by a statute which is applicable to all persons under like circumstances, and does not subject the individual to any arbitrary exercise of power.” Lowe v. Kansas, 163 U. S. 81, 16 Sup. Ct. 1031, 41 L. Ed. 78. Upon the other hand, from the language of the brief, it appears that defendant’s counsel are relying, for the support of the defense thus set up, as well upon the Constitution of the state as upon that of the United States, though the particular provision relied on is left to inference. If it be article 48 of the present, and article 46 of the preceding, Constitution, the argument of the counsel is answered in the following excerpt, which we quote from the able opinion of the judge a quo, to wit: “The Constitution (article 48) prohibits only local or special laws granting to any corporation, association,- or individual any special or exclusive right, privilege, or immunity. But the act of 1888 is neither local nor special, but general; nor does it grant to any corporation, association, or individual any special or exclusive privilege. It merely grants to a certain class of corporations certain privileges not enjoyed by individuals or by corporations belonging to a different class. * * * There can be no doubt of the authority of the Legislature to confer on a given class of corporations powers and privileges not conferred on individuals. * * * But in such eases, the laws being general, and the individuals being free to organize themselves into such corporations, it follows that the rights conferred are really conferred on all citizens alike, provided, solely, they be exercised under certain forms, and for certain purposes.”
The objection that Act No. 115, p. 177, of 1888, is unconstitutional, because it contains “more than one object,” was considered in Succession of Bienvenu, 106 La. 595, 31 *891 South. 193, and held to be not well founded. We adhere to that ruling.
The judgment appealed from is accordingly affirmed.