Statement.
MONROE, J.
The plaintiff company caused executory process to issue to enforce the payment of a note for $5,000, made by the defendant, Mrs. Cronan, dated June 25, 1894, payable on demand, with interest at the rate of 8 per cent, per annum from date until paid, and seemed by mortgage on two lots of ground in this city with the improvements thereon. The defendants, Mrs. Cronan and her husband, Joseph Cronan, enjoined — Mrs. Cronan alleging that the lots belong to her, that she owes nothing to the plaintiff company (defendant in injunction), that said company is not a homestead association and that she has never been a stockholder therein, that in July, 1894, acting under marital influence, she transferred the two lots in question to the Mutual Loan & Building Company (now called the Teutonia Loan & Building Company), but that the transfer was a simulation, and that the retransfer of said lots to her in February, 1895, was merely a rescission thereof, and Joseph Cronan alleging that said note when issued was without consideration, and was given as collateral security for such sums as the company might thereafter advance for the building of a house which he desired to have erected on the lots of his wife; that *280 the defendant in injunction as his agent caused the house to be erected, and in October, 1894, rendered an account showing an expenditure of $4,308.69, but that said account was incorrect and has never been approved; that, knowing that said company had expended money, petitioner allowed it to retain possession of the house when completed and to collect the rents, and that the same amount as he believes to $3,280 or more; that he is entitled to an account of the rents collected and disbursements made, and that upon such accounting it will be found that there is nothing due to the defendant in injunction.
The matter came up in the district court on a rule taken by the company to dissolve the injunction, upon the trial of which the following facts were elicited, to wit:
In August, 1893, Mrs. Cronan subscribed for nine shares of the stock of the Mutual Loan & Building Company (homestead association of which the defendant in injunction is the successor by change of name), for which she agreed to pay in monthly installments at the rate of 83% cents per share. Thereafter, being the owner of the two lots here in question, she decided to erect upon them a double tenement house, and with that view on May 2, 1894, applied to the company for a loan of $3,510, which was followed, on May 21, 1894, by a subscription for 39 additional shares of stock. In granting the application for the loan, the company agreed to purchase the lots at the amount specified, to wit, $3,510, which was to be expended in the erection of the house, and further agreed to retransfer the property, as thus improved, to Mrs. Cronan for $3,900, which was to be paid, 'in accordance with its rules, with 8 per cent, interest; the difference between the two amounts representing a bonus. No other steps having been taken and no consideration whatever having been received by her, Mrs. Cronan, on June 25, 1894, gave the note for $5,000, payable on demand and bearing interest at the rate of 8 per cent, from date until paid.
On July 3, 1894, she conveyed her lots to the company for the nominal price of $1,000, no part of which was paid, instead of $3,510, as had been agreed, and thereafter the company proceeded to build the house, employing Joseph Cronan as the builder. The first payment on this account was made on July 14, 1894, and the work and payments continued until November 2, 1894, when the house was completed; the aggregate disbursements having amounted, it is said, to $4,308.69 (though it appears to us to have been $4,309.69). In . view of the fact that the cost of the house thus exceeded the amount contemplated, Mrs. Cronan was, it is said, upon January 25, 1895, credited with an additional loan of $1,000, for which she was charged a bonus of $100. The evidence does not establish that she made any application for this loan, though it may be said that she subsequently acquiesced in being charged with an amount in excess of that originally agreed on. On February 13, 1895, the company rec.onveyed to her the property for the consideration of $5,000, represented by the note of June 25, 1894, here sued on, which by the terms of the act of reconveyance (in the form of a sale) is secured by mortgage and vendor’s privilege. According to this act, also, the purchaser binds herself to pay such sums monthly as will amount in each year to 10 per cent, of the principal and interest of the note, the interest to be calculated on the balance due after deducting payments made. There is no reference in the act to her stock subscription. On the part of the company, the business was conducted by W. W. Weiss, its then secretary, who in 1901 removed to Pittsburg, Pa., at which place he was examined under commission as a witness on behalf of the company. It was he who furnished Mrs. Cronan with the “passbook” in which her account with the company was to be kept, and who, up to a *281 certain time, made the entries therein and signed them. It appears, however, that some time prior to his departure she left the book with him, and that she could never thereafter regain possession of it, and, although entries appear to have been made in it, and money appears to have been received for her account as late as January, 1902, there are no signatures by Weiss or his successors in office later than March, 1898; the company in the meanwhile having been in possession of the property and of the book, which latter was produced by it for the purposes of the trial. It is shown tha.t the entire revenues, with the exception of say $50, which the property has yielded since the completion of the house, have been paid over to or collected by the company, and it is conceded that the company has had the exclusive administration of the property since the autumn of 1900. The judge a quo found, and we think correctly, that, exclusive • of the rental of the corner tenement for the year ending October 1, 1901, the total amount of rental received by the company up to that date was $3,565.00, as follows, to wit:
As rent from the corner tenement:
From Ayres, October, 1895, to October, 1896, at $40 per month, less five
months not paid.................$ 280 00
From Avery, October, 1896, to October, 1898, at $35 per month....... 840 00
From Davenport, October, 189S, to October, 1899, at $30 per month... 360 00
From Mrs. Cronan, November, 1899, to November, 1900, at $30 per month 360 00 As rent for the adjoining tenement:
From Scott, October, 1895, to October,
3890, at $35 per month........... 420 00
From Boland, October, 1897, to October, 1898, at $30 per month....... 360 00
From Shields, say December, 1898, to August, 1899, inclusive, 9 months
at $25 .......................... 225 00
From Shields, October, 1899, to October, 1900, at $30................. 360 00
From Pasteur, October, 1900, to October, 1901, at $30................. 360 00
Total $3,565 00
The judge a quo also found that Mrs. Cronan was entitled to be further credited with the difference between the face of the note sued on and the aggregate amount of the disbursements made by the company, plus the bonus of $500 charged by it; but he, apparently by inadvertence, took the figures representing the disbursements alone as including both the disbursements and the bonus, and rendered judgment perpetuating the injunction in so far as to order “that the amount for which the writ of seizure and sale * * * is to be executed is $5,000, with 8 per cent, per annum interest from June 25, 1898, subject to a credit of $4,235.31, with 5 per cent, attorney’s fees on the balance due and all costs save the costs of the injunction,” and further decreeing that “Mrs. Cronan is entitled to an account from the * * * company of all rents collected, or which with diligence could have been collected, from the property mortgaged from October 1, 1901, to the date of the sale under executory process herein, with reservation of the company’s rights to reimbursement of all taxes and insurance paid by it on said property since October 1, 1895, and of all necessary repairs to said property since March 5, 1902”; the demands of the plaintiff in injunction, in other respects than as thus stated, being rejected. The company has appealed, and the plaintiffs in injunction pray that the judgment be amended by perpetuating the injunction without qualification.
Opinion.
We adopt the following from the opinion of our learned brother of the district court as correctly and succinctly stating the relation between Mrs. Cronan and the company, to wit:
“With the facts as thus found by the court, there is an end of Mrs. Cronan’s contention that the loan was for the benefit of the community * * * She, and not Mr. Cronan, was the borrower. She wanted to build a house on her two lots, and for that purpose she needed money. She but exercised a right given her by law when she applied to the * * * company for a loan, and secured it by hypothecating both the ground and improvements thereon. A married woman can, with the authorization of her *282 husband, mortgage her separate property for the purpose of obtaining money to improve it. Civ. Code, art. 122. The improvements paid for with the money borrowed became her separate property. To borrow, she need not be authorized by the court. The sole difference between a loan contracted under authority of the court, in conformity with articles 126, 127, and 128 of the Civil Code, and a loan contracted with the authorization of the husband alone, is that in the former case the judge’s certificate is conclusive proof that the money has inured to the benefit of the wife’s separate estate, whereas in the latter the lender carries the burden of proving, when so required, that the wife’s separate estate was benefited. This burden was fully discharged by the company; so that, viewed as a loan, the contract between the parties is not open to attack. But the lender in this case happens to be a homestead association, and the borrower a shareholder therein, and the loan was effected in the form of a sale and resale. ‘Such a contract and arrangement,’ says Act No. 115, p. 178, of 1888, § 4, ‘shall not be considered or dealt with as a loan, but as a sale to the association, and then a resale to the person from whom the association acquired it; and such association, to secure the amount due by such person, shall have the rights, privileges, and securities which are now accorded by law to the vendors of property.’ American Homestead Company v. Karstendiek, 111 La. 884, 35 South. 964. * ® * Mrs. Cronan, however, had the right to show the real consideration of the sale —the amount due by her to the company at the time of the sale — and this has been proven to be, not $5,000, but,” etc., and the figures are stated as in the decree.
It may be remarked in this connection that no objection has been interposed to the inquiry as to the real consideration of the contract. In the brief filed by counsel for the company it is said:
“The consideration of the note foreclosed on is shown to be the amounts advanced for the erection of the building, with the bonus agreed upon added. It bears 8 per cent, interest from its date, June 25, 1894.”
And the objections urged to the judgment appealed from are:
(1) That it does not find for defendant in injunction the true amount expended for the construction of the building.
(2) That it does not allow the bonus.
(3) That it does not allow interest from the beginning of the loan.
(4) That it does not allow various amounts expended for taxes, insurance, etc.
(5)That it allows too much by way of credits for rents collected.
Considering the first and second of these objections, it was evidently the intention of the judge a quo to allow the bonus; but the figures, taken from an account filed in evidence in which he supposed it was included, in point of fact represent only the actual disbursements of the company. We are, however, of opinion that the bonus ought not in this case to be allowed. Mrs. Cronan originally applied for a loan of $3,510, and upon the back of her application we find the indorsement :
“We, the undersigned members of the committee on real estate, respectfully report that we have carefully examined the premises above described and recommend that it be purchased at the price named, viz., $3,510; and upon compliance with our rules and regulations we agree that this company shall sell the said property to Mrs. Catherine Cronan at the price of $3,900, payable according to the terms and conditions of the by-laws of this company.”
It is true that this writing is unsigned, but it is not denied that it represents the action taken by the company, and it is quite certain that, unless it does, no agreement whatever as to a bonus is established. As it subsequently turned out, the cost of the house which the company undertook to erect exceeded, not only the $3,510 originally contemplated, but also the $3,900 for which the-property was to be resold to Mrs. Cronan. We do not, however, find that she was any more responsible for this than was the company, and whilst, ex sequo et bono and by acquiescing therein, she should be held liable for the additional expenditures necessary to complete the house, there is no longer any basis upon which to rest the claim for a bonus, since the company is no longer able to comply with its agreement to sell her the property for $3,900, within which amount the only bonus that she ever agreed to pay is included.
To the objection that the judgment appealed from does not allow interest on the- *283 note of $5,000 from the beginning of the loan, the answer is that there has been no loan of $5,000, and that Mrs. Cronan never at any time owed that amount of money. On May 2, 1894, she applied for a loan of $3,510, and if that amount had been then placed to her credit, so that she could have used it, or so that it could have been used for the purposes of her contract with the company, she might reasonably have been charged with interest on it. But she at that time obtained no money, and none was placed to her credit or to the credit of her contract. On June 25th following, for some reason which is wholly unexplained, she was called on to give, and did give, the note of $5,000, and upon that day what appears to be the first entry was made in her account upon the books of the company, as follows, to wit: “June 25, ’94. To 10% bonus on $4,000, $400.00.”
It does not appear from this that $4,000 was then placed to her credit or to the credit of her contract, nor does it appear that such an entry was made at any other time, whether for $4,000, or for any other amount. In other words, it does not appear, nor, as we believe, is it a fact, that, save by actual payments from time to time for work and material done and furnished for the building of the house, the company ever set apart any particular sum for the execution of its contract with Mrs. Cronan. But, if she or her contract had been credited on June 25th with $4,000, it would not follow that she should thereafter be charged with interest on $5,000. She had applied for a loan of $3,510, and she might have been charged with interest on that amount from the moment that it was set apart for the purposes of her contract; but it does not appear that it was ever so set apart. She is therefore liable for interest only upon the disbursements as they were made. This makes a material difference to the prejudice of the plaintiff in injunction, since the company has charged her, from ther first — I. e., from July 25, 1894— each month, with $33.33, as one month’s interest on $5,000; and this, although it does not pretend that the second advance of $1,000, necessary to make up the $5,000, was made until January 25, 1895. In point of fact, however, Mrs. Cronan was never credited with $1,000. That item includes $100 as a bonus which it is not shown that she ever agreed to pay, and she is liable only for so much of the balance as the company has actually disbursed, with interest on the disbursements from the dates at which they were made.
It is objected that the judgment appealed from does not allow various amounts expended by the company for taxes, insurance, etc. The answer, in the language of the judge a quo, is as follows :
“The company has paid the city and state taxes and insurance on the property, but has not made sufficient proof of the amount thereof. In the note of evidence * * * there appears the following: ‘By Mr. Dart: We offer in evidence a series of statements and tax receipts, to be substituted hereafter with a statement of the contents of the same in lieu of the original.’ There is in the record one statement of taxes, repairs, and insurance, filed on the day the cause was argued; but there is nothing to identify it with the foregoing offer, nor -is its correctness attested by any one. The account produced subsequent to the submission of the cause was properly objected to on the ground that it is a mere copy of the company’s books, which are not evidence against Mrs. Cronan,” etc.
It is further objected that the judgment appealed from allows too much, by way of credits to the plaintiff in injunction, for rents collected by the company.
The judge a quo relied upon the testimony of the two plaintiffs in injunction and of their son, William Cronan, and he says:
“As against the testimony of these three witnesses, we have that of Mr. Weiss, a former secretary of the company, who evidently spoke from indistinct recollection and without reference to the loan account or the passbook. Thus he says, in answer to the nineteenth interrogatory : ‘For a long while after tire completion of the house it was vacant, and no rent was collected because the property was not rented. * * * In 1896 one side of the prop *284 erty was rented by Mrs. Cronan to a Mr. Avery for one year at $35 a month’ — giving the court to understand that the property was unoccupied until 1896. A reference to the passbook shows credits for rents as early as November 15 and December 11. 1895.”
And he points out other discrepancies between the testimony of the witness and the admissions of the company as contained in the pass book. We therefore find no error in his conclusion upon the subject.
Counsel for the company refer in their brief to the fact that Mrs. Cronan is a stockholder and that her stock stands pledged for the amount loaned to her. Mrs. Cronan is not claiming anything on account of her stock. On the contrary she denies that she ever became a stockholder, and the petition for executory process asks for nothing with regard to the stock. As a matter of fact, she subscribed for 48 shares of stock, for which she agreed to pay at the rate of 83% cents per share per month, making a total of $40 per month for the 48 • shares. Her pass book shows that she has, from the first, been charged $41.67 per month on this account, and no explanation of the apparent overcharge of $1.67 per month is offered. So that, overcharged, as she has been, on both the interest and the stock subscription accounts, it is not surprising that she was found to be in default, and that, being in default, she has never been recognized as entitled to participate as a stockholder in the profits of the company’s business.
In conclusion, we find that the amount to which the company may be entitled is dependent upon an adjustment of accounts, and upon evidence which is not and cannot be presented in authentic form, and that its attempt to proceed via exeeutiva savors of an abuse of that process; that the rights of the parties cannot be wholly determined in this proceeding because of the insufficiency of the evidence, and cannot be partially determined because the plaintiff in executory process does not pray for judgment in the ordinary form and cannot be permitted to sell the property of the defendant (plaintiff in injunction) to satisfy a claim, the amount of which is neither ascertained nor readily ascertainable.
It is therefore ordered that the judgment appealed from be amended to the extent, and in that it is now adjudged and decreed that the writ of injunction herein issued be maintained and made perpetual, and the proceeding via exeeutiva dismissed, reserving to the defendant in injunction and to Mrs. Catherine Cronan, plaintiff in injunction, respectively, the right to litigate, in such other form of action as they or either of them may be advised, the claims and counterclaims which have been herein set up, together with such others as may be connected therewith or as may have grown or as may grow out thereof.
It is further adjudged and decreed that the appellant, defendant in injunction, pay all costs.