## No. 13,713.

SUCCESSION OF ANGELINE BELL BIENVENU, WIDOW OF GEORGE BUYATT.

### SYLLABUS.

1. The borrower deposited an amount to pay the price of the lot. The homestead company, with this money, paid for the lot and took a transfer in its name for the account of the borrower. After having purchased the lot, the company placed improvements thereon and sold lot and improvements to the borrower, who, as relates to the lot, only received that for which she had paid. It was not a transaction such as is contemplated by Act 115 of 1888 where the borrower sells property to the homestead company, and afterward it is sold back by it burdened by the terms of the act with vendor's privilege. The company had a vendor's privilege and the property burdened with a mortgage in favor of a third person is subject to the claims of this mortgagee.

2. Under the circumstances, the right of the homestead company is recognized and the lot is to be appraised separately from the improvements thereon and the amount distributed between the mortgage creditor and the homestead company in proportion that the separate appraisement will bear to the whole appraisement.

3. The clauses and sections of Act 115 of 1888 form part of one object. The Act embraces one object, also its title, and is not unconstitutional on the score that it contains many objects.

4. The vendor's privilege claimed not being recognized, the placing the title in the name of the borrower is not subject to successful attack on the ground that the Act 115 of 1888 contains peculiar and special privileges granted to homestead associations in derogation of the Constitution.

APPEAL from the Civil District Court, Parish of Orleans.—*St. Paul, J.*

---

*Dart & Kernan,* for Mutual Loan and Building Company, Creditor, Opponent and Appellant.

---

*Benjamin Rice Forman,* for Walter W. Chandler, Tutor, Opponent and Appellee.

The opinion of the court was delivered by

BREAUX, J.  Both appellant and appellee complain of a judgment rendered by the District Court, ordering that a balance of nineteen hundred and eighty-eight 61-100 dollars to be paid to the opponent represented by his tutor and to the Mutual Loan and Building Company, in proportion to the value of improvements made on the land by the latter, and the naked lots which were bought with money paid over for the purpose by the late mother ·of George Buyatt, minor, who is represented by his tutor as before mentioned.

Mrs. Buyatt, widow, mother of the minor, was indebted to him in the sum of ten thousand dollars.  The claim was duly recorded in 1892 and was secured by legal mortgage.  In the month of July, 1893, Mrs. Buyatt applied to the Mutual Loan and Building Homestead Company for a loan.  She deposited eleven hundred dollars with the company to purchase two lots of ground.  With this amount the plaintiff company bought the lots, taking the deed in its name.  The company had a house built upon the lots at a cost of twenty-four hundred dollars.  The amount of the loan to her by the company was twenty-seven hundred dollars.

From this amount the company deducted a bonus of ten per cent. charged, we are informed, for making the advances and erecting the improvements.  This left of the loan the sum of twenty-four hundred and thirty dollars.  After the improvements had been made on these lots, the company transferred to her the lots and improvements for the amount of twenty-seven hundred dollars, the amount of her loan, and she executed her note for that amount, secured by vendor's lien and mortgage.

After the death of Mrs. Buyatt, in course of the settlement of the succession, the administratrix sold the property in question, which was the only property that the deceased had owned.  The proceeds of the sale amounted to two thousand seven hundred and twenty-five dollars. The administratrix paid out everything except the balance of nineteen hundred and eighty-eight 61-100 dollars which she has carried upon her account of administration to the credit of the plaintiff company. The tutor of the minor, George Buyatt, son of Mrs. Buyatt, opposed the account of the administratrix upon a number of grounds, claiming the ten thousand dollars before mentioned and a legal mortgage against her property as dating from January, 1892; he contends that the amount due to the Mutual Loan and Building Company is subor-

dinate to that due the minor, George Buyatt, and that it should be paid to him in preference to any claim of the Mutual Loan and Building Company, as the latter has no mortgage or vendor's privilege.

He claims that the purchase made by the Mutual Loan and Building Company of the unimproved real estate before mentioned was for her account, in acordance with agreement, and with her money; that the money was deposited with the said Mutual Loan and Building Company to buy this land, the proceeds of which are to be distributed, and that the object in putting the real estate in the name of the Mutual Loan and Building Company was to evade the mortgage recorded in favor of the ward; that the property never was paid for by the Mutual Loan and Building Company and is not its property.

Opponent charges that Act 115 of 1888, the Homestead Act, is contrary to the Constitution of 1898 and the Constitution of 1879 in that this act attempts to grant to homestead associations a special and exclusive right which it does not grant to other corporations and other citizens of the State; that it infringes upon the equal rights of individuals; that it is contrary to Article 31 of the Constitution of 1898, and a similar article in the Constitution of 1879, in that it does not embrace one object, but it embraces two or more objects.

We take up for decision the first question before us in the order of the argument growing out of the contention of opponent that his mortgage has priority because the purchase of two vacant lots conferred no title upon the company; that the property was in effect transferred to Mrs. Buyatt, and that immediately after the transfer to the company it became subject to the minor's mortgage.

Mrs. Buyatt paid the price and not the company. This fact is not disputed. The purchase was made in accordance with her direction. The company was a transferee without a price. Such a transfer as between the owner and the one who holds a paper title can have no vitality as a sale. The company signed its name to the deed really as her agent and representative.

In observing the form of selling the property to her, as relates to the land it held and which had been bought with her money in compliance with agreement, it only placed her in possession of her property. The company, from the date of the deed to it, held the property in trust. No third person acquired a right against the land while the title was in the name of the company. We take as settled that a *cestui qui trust* can compel the trustee to convey the property bought for the former, if third persons have not acquired any rights against

the property. There is no question here of any right or interest acquired by third persons against the property. The controversy is exclusively between the heir of Mrs. Buyatt and the company which acted in a representative capacity in buying the property. Our opinion on this point, we think, finds ample support in the following cases: Brigham vs. Newton, 49 Ann. 1539; Hodges vs. Ory, 48 Ann. 54; Ringe vs. Binns, 10 Peters, 269; Michoud vs. Girod, 4 Howard 503; McClendon vs. Bradford, 42 Ann. 160; Hobson vs. Peake, 44th Ann. 383.

The minor's mortgage was extant upon the record when Mrs. Buyatt received the title from Fredericks and Redersheimer through the intervention or agency of the Homestead Company.

The case to which our attention is invited by counsel for the company does not sustain their contention. Succession of Latchford, 42 Ann. 529. The borrower in the cited case above, transferred her property to the company. In the case in hand, on the contrary, the company placed the title in the name of the real owner, and could not, in view of the facts, acquire title as owner, nor could it retain a mortgage and vendor's privilege on property it held for another.

. The improvements placed on the property by the company give rise to the next question in the order of the argument to be considered and determined.

While the company held the lots in its name, it built improvements thereon under a special agreement with the owner. While it is true that the minor's mortgage attached to the land, it can scarcely be held that it covered the improvements placed thereon in accordance with an agreement with the owner. If the minor's mortgage attached to the property, he would be benefited at the expense of another who owed him no duty. He would be benefited to the detriment of the Homestead Company that acted in good faith in placing the improvements on the lots. We have seen that the parties to the agreement had created a constructive trust under which the Homestead Company held temporarily for the real owner. Improvements (as in our case) placed on the property held in trust with the consent of the owner must be accounted for when the property is delivered to the owner. The accounting here was made by attempting to create a mortgage on the property of Mrs. Buyatt by transferring property and improvements as if all was owned by the company. There was an error committed by both parties to the deed; neither should derive a benefit to the injury of the other.

The idea that the company, because of failure to appraise the property prior to the sale, under the circumstances of the case, has lost the amount it expended for improving the lots does not recommend itself as eminently the proper thing. There was no issue raised and nothing to suggest the necessity of a separate appraisement before the sale. Besides, the proposition that a separate appraisement cannot always be required, finds support in the case of Succession of Lenel, 34th Ann., 868.

We only go to the extent of holding that a creditor whose claim is secured by a vendor's privilege is not compelled to procure a separate appraisement before the sale of a particular immovable by which it is encumbered. Property was sold without a prior separate appraisement in the following cases, and the rights of the parties were considered as though the appraisement had been separately made: Lanusse vs. Lanna, 6 N. S. 103 (114); Andry vs. Guyol, 13 La. 8; Diggs vs. Green, 15 La. 417; Cordeville & Lacroix vs. Hosmer, 16 La. 590; McDonough vs. LeRoy, 1 Rob. 173; Succession of Erard, 6 Rob. 335; Jamison vs. Barelli, 20 A. 452.

It is not necessary for us to go as far in the direction of holding that prior appraisement is necessary as was done in the early decisions to which we have referred. We only cite to the extent that they support our views in the case in hand and no further.

This brings us to the question of the amount due to the Homestead Company. The tutor, as an opponent, claims credit and an interest on accounts paid. For instance, Mrs. Buyatt paid one thousand dollars October 24th, 1893. No credit was directly given for that amount from that date. Credit was given by paying instalments to September 25th, 1895. The amount was not credited in a lump sum, but credit was given in monthly instalments, although the instalments had not matured when the payment was made. The debtor, in the deed of sale to her, expressly bound herself to pay monthly on the note and interest. The company availed itself of the obligation of the borrower to impute sums handed over to the company's officer by her to the payment of unmatured instalments. In other words, the borrower is expected to pay at maturity. If a larger amount be paid than is necessary to pay the matured instalments, it is, as ordinarily done, deducted from the loan and interest to date, but it (the surplus) is carried to the credit of unmatured instalments. The borrower must then look to the dividends for inter-

est earnings on his anticipated payments. This rule was followed throughout in dealing with Mrs. Buyatt. We can only say that one is at liberty to accept or decline such terms. Having accepted them, we do not think we should decide that the borrower is released from the payment of a balance due.

This brings us to opponent's attack for unconstitutionality. An act, he avers, which contains eight objects, some of which are not expressed in its title, is unconstitutional. Opponent assumes that the act contains as many objects as he states and that they, because of their number, are violative of the Constitution. We think it sufficient to say in general terms in answer to this attack upon the constitutionality of the statute that its different sections and clauses can be made part of one object. To carry out this one object, in acordance with the legislative will, it was necessary to delegate certain rights leading to and forming part of one object. There is nothing distinct, from or antagonistic to, the main purpose of the statute covering one object. We have not succeeded in distinguishing this case from the number of cases in which this court has decided that the statute had but one object which is expressed in its title.

The next ground of attack is that an act which gives special privileges to building or homestead associations (as granting them a vendor's privilege when one sells his property to them and then they sell it back when it is really no sale, but a loan) which is not given to other persons or corporations loaning money is in derogation of the Constitution.

Having pronounced against the claim made by the company for a privilege on the property of the owner for reasons heretofore stated, we do not conceive it necessary to pass specially upon the question presented. No privilege such as that referred to by opponent is enforced in this case.

For reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed.

Rehearing refused.

NICHOLLS, C. J., recused.