# No. 3875.

## AYERS ASPHALT AND PAVING COMPANY vs. MRS. L. B. HILL.

1. Section 119 of Act No. 45 of 1896 (the charter of the City of New Orleans), to the effect, that:

   "No person or corporation engaged in doing any street or banquette paving, or other public work, under any contract, agreement or stipulation with the City of New Orleans, or any department thereof, the cost, price or consideration of which is to be wholly or partially paid by local assessment on any property holder, or front proprietor, shall make, allow or give, or promise, or agree to make, allow or give any rebate, deduction, gift or present, or any other valuable consideration, whereby the actual sum due by said property holder, as his proportion, shall be in any way reduced or diminished, unless the same deduction or allowance shall be made to all persons liable to the assessment, shall be a complete and valid defense as against such persons or corporations, heirs, or assigns, doing such work, or in any suit or action brought to enforce the same, or in any suit or action to recover the value of such work, either against the city or any property holder thus discriminated against" makes no distinction between the reduction allowance or rebate which may have been influenced by improper consideration and such as may have been influenced by proper motives.

2. As no such distinction is made by the Statute, Judges may not do so without becoming legislators.

3. The title of an act need not do more than express the general subject of its legislation and is not required to index its contents. From this follows the rule, settled beyond controversy, that a title which reasonably expresses the general subject and is not calculated to mislead either the legislature or the public, is sufficient to cover all incidental and subsidiary provisions legitimately connected with such general subject and germane and cognate thereto, in short, all matters which may naturally and reasonably be expected to be found under a title.

4. Sec. 119 of Act No. 45 of 1896 is not obnoxious to Articles 6 and 29 of the Constitution of this State of 1879; nor to Section 10 of Article 1 of the Constitution of the United States; nor to the 1st Section of the fourteenth amendment to the latter Constitution.

Appeal from Civil District Court, Division "B."

Dinkelspiel & Hart, for Plaintiff and Appellant.

Merrick, Lewis & Gensler, for Defendant and Appellee.

MOORE, J. This was a suit to enforce payment of a local assessment for street paving. The paving was done by the plaintiff corporation under a contract with the City of New Orleans which was authorized by an ordinance of said City adopted in accordance with the provisions of Act 73 of 1876, and of Act 119 of 1886 as amended by Act 142 of 1894.

The defense is that plaintiff has forfeited its right to enforce its contract with the City of New Orleans, or to recover the value of the work performed, either of the City of New Orleans, or of any property owner, for the reason that the plaintiff contractor has compromised with certain abutting owners, and has received less from them than the amount assessed against them, and that defendant was not offered a similar reduction, but, on the contrary, payment of the total amount assessed against him was and is demanded of her. This defense is based on Section 119 of Act No. 45 of 1896, and which act is the charter of the City of New Orleans. The section referred to is as follows:

"Sec. 119. No person or corporation engaged in doing street or banquette paving, or other work under any contract agreement or stipulation with the City of New Orleans, or any department thereof, the cost, price or consideration of which is to be wholly or partially paid by local assessment on any property holder, or front proprietor, shall make, allow or give, or promise, or agree to make, allow or give any rebate, deduction, gift or present, or any other valuable consideration, whereby the actual sum due by said property holder, as his proportion, shall be in any way reduced or disminished, unless the same deduction or allowance shall be made to all persons liable for any part of such assessment, and to the City of New Orleans; and proof of any such discrimination against the City, or any such person liable to the assessment, shall be a complete and valid defense as against such persons or corporations, heirs, or assigns, doing such work, or in

any suit or action brought to enforce the same, or in any suit or action brought to enforce the same, or in any suit or action to recover the value of such work, either against the City or any property holder this discriminated against."

To this defense the plaintiff filed its special plea setting up the unconstitutionality of the section of the act. This plea being in these words:

"First: That said section of said law contravenes and is violative of article 29 of the Constitution of Louisiana of 1879, in force when said law was passed, because no such objects as expressed in said section is given in the title of said law, and said law including said section embraces more than one object.

"Second: Said section of said law further contravenes and is violative of Article 6 of said Constitution, because it deprives plaintiff and others similarly situated of their property without due process of law, and attempts to deprive plaintiff and others similarly situated of the liberty to contract and dispose of their property as they see fit.

"Third: That said law contravenes and is violative of Section 1, of the Fourteenth Amendment to the Constitution of the United States, inasmuch as it attempts to deprive plaintiff and other persons similarly situated of their property and liberty for reasons hereinabove stated; that it further denies the plaintiff and other persons similarly situated equal protection of the law, attempting to deprive them of the right of compromise, remission and donation which apply to all persons alike, save an invidious distinction as attempted to be made by said section of said law.

"Fourth: That said section of said law further contravenes and is violative of section 10 of article 1 of the Constitution of the United States, inasmuch as it attempts to impair the contracts of the plaintiff and others similarly situated might make with the City of New Orleans, by attempting to destroy the rights acquired under such contracts."

370

The evidence adduced to establish the facts averred by defendant consisted of an admission made by counsel for plaintiff and the testimony of one of the latter's counsel.

The admission was to this effect:

"With full reservation of the objection heretofore made and the exception to the ruling of the Court and the reservation of a bill, counsel for plaintiff admits that if Mr. Leon Joubert were on the stand he would swear that the assessment against his property was $607.80; that previous to the matter coming into the hands of present counsel for plaintiff, he had paid all but ninety-two dollars, with six per cent, interest from May 8th, 1899, for which they accepted seventy-five dollars, and gave him a receipt in full on December 4th, 1903.

"Counsel further agree that no offer of compromise or similar compromise was made to the defendant here, because the defendant did not ask for same, but denied all liability and refused to pay anything."

The testimony was as follows:

"By Mr. Lewis:

Q. Mr. Hart, you are attorney of the Ayers Asphalt Company?

A. Yes, sir.

Q. Did you ever make Mrs. Hill an offer similar to the one made to Mr. Joubert?

A. I never made any offer to Mr. Joubert, I never saw Mrs. Hill. I had several conversations with Mr. Hill about this matter and told him the company was very anxious to close out this matter, as it was one of only two claims that was unsettled and would like to arrange a settlement, and he said, I positively refuse to pay a cent; I propose to fight it all along the line."

Q. Did you tell him that you had compromised with Mr. Joubert?

A. No, sir; I did not. It was none of his concern. I would have made a much more liberal compromise with Mr. Hill than was made with Mr. Joubert.

Q. You refused to compromise with me for fifty per cent?

A. Yes, sir.

Q. You said you would accept the face of the claim, less costs as a compromise?

A. I don't remember that positively. I may have said that.

Q. Isn't that what you said?

A. I think I did. I wouldn't be absolutely certain about that. I didn't think that conversation was serious. We met at the foot of the stairs that day. You made that statement to me. I didn't think it was serious. Nothing came of it."

There was judgment in favor of the defendant, rejecting plaintiff's demand and the latter appeals.

I.

Unless the section of the charter of the City of New Orleans relied on by defendant as the basis for her defense be amendable to the constitutional objections urged against it, it is manifest that plaintiff cannot maintain its present action.

The inhibition contained in that section and the consequence which is to follow a breach thereof, entered into the contemplation of the contracting parties, the plaintiff and the City of New Orleans, at the time of contracting.

In contemplation of law the provisions of this section are written into the instrument evidencing the contract, and, consequently, they constitute a part and portion of the contract. If they are violated the penalty follows:

It is contended, however, by plaintiff's counsel that the "deduction or allowance" made by the plaintiff company to Joubert was not a "discrimination" in the sense of this statute; that what the law maker intended to accomplish by this statute was to guard against property owners being improperly influenced and induced to petition for the paving of streets by the promise of a rebate, reduction, gift or present of the proportion of the assessment which might be due by them, and who, without this promise, might not have been willing to petition for the paving, and to thus impose a burden on other property holders and on the city; that, therefore, the circumstances of the compromise deduction or allowance made with the property holder is to be enquired into and if the reduction or allowance or rebate has not

372

been influenced by improper motives and, as in this case, did not, and could not have had the effect of accomplishing what the law maker intended by this enactment to avoid, then the statute can have no application; otherwise the statute would be mischieveous in its tendencies.

That the compromise with Joubert was noninfluenced by improper considerations of any character whatsoever is not and cannot be questioned, but this, in our opinion, does not affect the question at all.

With the intentions of the law makers, or with the policy of the law; with the evil the statute intended to avert, or with the good it sought to accomplish, courts can have no concern when the terms of the law, itself, are clear and free from ambiguity. These are, assuredly, valuable aids to interpretation, when interpretation is necessary, but this statute needs no interpretation. Its language is clear and free from all doubt and uncertainty. It specifically declares that the contractor shall not: "make, allow or give or promise or agree to make, allow or give any rebate, deduction, gift or present, or any other valuable consideration, whereby the actual sum due by said property holder, as his proportion, shall be in any way reduced or deminished, unless the same reduction or allowance shall be made to all persons liable for any part of such assessment." There is no condition or circumstance mentioned or implied, whereby, and under which, the contractor may "make, allow or give, or promise, or agree to make, allow or give any rebate, deduction, gift or present or other valuable consideration whereby the actual sum due by such property holder as his proportion shall be in any way reduced or deminished," except that "the same deduction or allowance shall be made to all persons liable for any part of such assessment, and to the City of New Orleans." Neither in terms, nor by legal implication, does it make any distinction between such discrimination when the descrimination is influenced *mala fides,* or when it is effected in the best of faith.

As no such distinction is made by the law, Judges may not do so without becoming legislators. Ubi lex non destinguit, nee nos debemus distinquere.

So also, if it be said that the statute is mischievous in its tendencies if it has the effect of visiting upon the contractor the penalty prescribed therein, even if the reduction is made bona fide and uninfluencèd by improper motives, the answer is, that the responsibility therefore rests upon legislators, not upon Courts.

"No evils arising from such legislation could be more far-reaching than those that might comè to our system of government if the judiciary, abandoning the sphere assigned to it by the fundamental law, should enter the domain of legislation, and upon grounds merely of justice or reason or wisdom, annul statutes that had received the sanction of the peoples representatives. We are reminded by counsel that it is the solemn duty of Courts in cases before them to guard the constitutional rights of the citizens against merely arbitrary power. This is unquestionably true. But it is equally true—indeed, the public interests imperatively demand—that legislative enactments should be recognized and enforced by the Courts as embodying the will of the people, unless they are plainly and palpably, beyond all question, in violation of the fundamental law of the Constitution. "Atkins vs. Kansas 191, U. S. 207."

## II.

There is no merit in the contention that this section of the act violates Art. 29 of the Constitution of the State of Louisiana of 1879, which constitution was in force when the law was enacted and which article provides that:

"Every law enacted by the General Assembly, shall embrace but one object and that shall be expressed in the title."

The title of the act in which this section occurs is "An act to incorporate the City of New Orleans; provide for the government and administration of the affairs thereof; and to repeal all acts inconsistent therewith." The argument is that by including Sec. 119 in the act, the statutue is thus made to contain a plurality of objects and that the distinct object of Sec. 119 is not embraced in the title of the act. The title of an act need not do more than express the general subject of its legislation

and is not required to index its contents. From this follows the rule, settled beyond controversy, that a title which reasonably expresses the general subject and is not calculated to mislead either the legislature or the public; is sufficient to cover all incidental and subsidiary provisions legitimately connected with such general subject and germane and cognate thereto—in short, all matters which may naturally and reasonably be expected to be found under a title.

As said by us in City of New Orleans vs. Cotonio, 1 Court of Appeal Reports p. 156-158:

"If all the parts of a statute have a natural connection and reasonably relate, directly or indirectly, to one general and legitimate subject of legislation the act is not open to the objection of plurality, no matter how extensive or minutely it deals with the details looking to the accomplishment of the main legislative purpose."

124 U. S. 656; 111 U. S. 1; 105 U. S. 278; 109 La. 570; 106 La. 595; 106 La. 345; 104 La. 254; 51 La. 1213; 50 A. 1358; 49 A. 1335; 49 A. 1530;-1621; 46 A. 1031; 41 A. 456, 771, 910; 39 A. 455; 32 A. 779; 31 A. 1; 20 A. 196.

The statute in hand deals with but one general object the government and administration of the affairs of the City of New Orleans, which City is, by the said act, incorporated; hence, what could be more naturally and reasonably be expected but that, under such a title, would be found provisions prescribing regulations for the good order, peace, health, protection, comfort, convenience, and morals of the community, including the right to levy and collect taxes and local assessments for works of public improvement; authority for laying out streets, building sewers; restricting and limiting the power to incur debts and obligations and *prescribing the terms and conditions which must enter into and become a part of all contracts which the City may make with third persons.*"

Strictly within the perview of governmental functions; germane and cognate to the administration of the affairs of a municipality, and legitimately connected with the incorporation of a body politic are the provisions of Sec. 119, for asmuch as they

375

simply prescribe a condition which must enter into and form a part of "any contract agreement or stipulation with the City of New Orleans, or any department thereof," for "street or banquette paving or other public work," the "cost, price or consideration of which is to be wholly or partially paid by local assessment on any property holder or front proprietor."

In Kathman vs. City of New Orleans 11 A. 145 it was held that an act entitled "an act to consolidate the City of New Orleans and provide for the government and administration of its affairs, was sufficiently comprehensive to warrant a section of the act which exempted the City from furnishing bond and security in matters of litigation in which the City was a party.

In Lafon vs. Dupocg et al 9 A. 350 the Court held that the title of an act entitled "an act to amend the several acts relative to the police and government of the City of Baton Rouge," was sufficient for its sixth section authorized the City Council to pass all necessary ordinances regulating the weight of bread and to enforce compliance by fine and improsonment.

In Moutclair vs. Ransdell, 107 U. S. 147 the Court held that under an act entitled "an act to incorporate the town of Union," in the state of New Jersey, the constitution of which state has a provision similar to ours, "a government for the town could be established, including taxation for its support, Courts for the trial of offenders, authority for laying out streets, building sewers and making assessments," adding, at p. 154, that: "under any other rule it would be impossible to organize a City government without a large number of distinct acts." "If this objection," continued the Court, "was sustained it would annul a large portion of the legislation of this state."

In the city of St. Paul vs. Lamprech 88 F. R. 449 the Court of Appeals, held an act to amend "an act to incorporate the City of New Orleans" is not obnoxious to a constitutional provision limiting legislature measures to one subject, merely because it authorizes the municipality, among other things, to issue bonds to defray the cost of a railroad and wagon bridge across the river. The Court, in the course of the discussion, said: "This

provision of the Constitution ought not to receive a narrow or technical construction which will embrace legislation by making laws unnecessarily restricted in their scope and operation; but like all provisions of the organic law, it should be fairly and liberally interpreted and enforced, so that it will serve to prevent the abuses at which it was aimed, without placing unnecessary restraints upon legislative action. An act like the one in hand, which revises and amends the charter of a City located on the banks of a large river is certainly not obnoxious to a constitutional provision limiting legislative measures to one subject, merely because the act authorizes the municipality, among other things to issue bonds for the purpose of defraying the cost of a railroad and wagon bridge across such river. "A provision of that kind has a natural and obvious relation to the general subject to which the attention of the legislature was for the time being addressed, and for that reason such a provision must be pronounced genuine to the general purpose of the act."

## III.

Neither is the section in question obnoxious to Art 6 of the Constitution of this State of 1879, to the effect that "No person shall be deprived of his property without due process of law;" nor to the first Section of the XIVth Amendment of the Constitution of the United States which provides that: "No State shall make or enforce any law which shall abridge the privilege or immunities of citizens of the United States, nor shall any State deprive any person of xxxxx (his) property without due process of law, nor deny to any person within its jurisdiction the equal protection of its laws."

The argument in support of this contention that Section 119 of the act supra, contravenes these provisions of the fundamental law is that the section is an infraction of the right of liberty in that it denies the right to contract to plaintiff "and to others similarly situated, and to dispose of their property as they see fit; that the plaintiff's claim against the defendant constitutes" property "in the sense of the Constitutional provisions, and that

377

as this "property" is taken from them under the provisions of act, *supra,* simply because the plaintiff has exercised its right to dispose of similar property *ed est,* similar claims against parties other than the defendant, as it saw fit, this constitutes a deprivation of property without due process of law; and that the act is a denial to plaintiff and "others similarly situated," of the equal protection of the law, because it deprives them of the right of compromise, remission or donation a right possessed under the law by all others except those thus descriminated against.

The answer to this argument is the law itself. It does not undertake to deprive any person under any circumstances, of the right of liberty or the right to contract, nor of the same right of compromise, remission or donation" possession by any other person.

It simply provides, as we have indicated in the discussion of another branch of this cause that there shall be written into all contracts which the City shall make with "any person or corporation" for any work of public improvement, the stipulation, that the contractor shall not do the things which are inhibited in the section and that if he does the consequence shall be as therein provided.

The provisions of Section 119 were written in plaintiff's contract with the City—written in the contract by the law—and they can have no less binding force and effect than if they were written in the contract as a result simply of the convention of the parties thereto. Assuredly no one could seriously contend that these constitutional provisions could stand in the way of conventional stipulations of the character contained in Sec. 119, being incorporated in the contract and enforced at law.

## IV.

The final objection is that the statutes violates the 10th Section of Art. 1 of the Constitution of the United States which provides that "No State shall pass any law impairing the obligation of contracts xxxxx."

The statute does not "impair the obligation of contracts," it only provides how and in what manner the City must contract for certain work.

In the instant case the plaintiff, itself, "impaired" the contract it had with the City, by violating one of the stipulations of it, it has incurred the penalty agreed on and must abide the consequence.

Its acts, in the particular stated, furnish a "complete and valid defense" to the defendant and consequently, the judgment appealed from is affirmed.

May 14, 1906.

May 14, 1906, application for rehearing.