354 So.2d 1297 (1978)
STATE of Louisiana
v.
Eugene STRIPLING and Andrew Johnson.
No. 59947.
Supreme Court of Louisiana.
January 30, 1978.
Rehearings Denied March 3, 1978.
*1298 *1299 Garland R. Rolling, Metairie, for Andrew Johnson, Jr.
Arthur L. Harris, Sr., New Orleans, for Eugene Stripling.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Eugene Stripling, Andrew Johnson and Arthur Crossland were indicted by the grand jury of Orleans Parish for aggravated rape committed on December 30, 1974. La.Crim.Code art. 42. During their joint trial a directed verdict was granted in favor of Crossland. Stripling and Johnson were convicted and sentenced to death. Thereafter, *1300 on Stripling's motion the sentence of death was vacated, and he was sentenced to serve twenty years in the custody of the Director of the Department of Corrections. Johnson has not been resentenced.
On December 30, 1974 Terrence Batiste and the victim were at home at 3217 St. Peter Street in the city of New Orleans. At approximately 10:15 p. m. they heard what sounded like a gunshot coming from the next apartment, occupied by Wendell and Patricia Ricard, although only Wendell was present at the time. When they went next door to see what was happening, two armed males pushed them back into their living room and turned the lights off. Then Wendell Ricard, the neighbor, was brought into the Batiste living room by a third armed male. The assailants then searched the Batiste residence for valuables.
Terrence Batiste and Wendell Ricard were made to lie on the floor, while Eugene Stripling took the victim into the bathroom, where he raped her. Thereafter, Andrew Johnson replaced Stripling and also raped the victim.
When the victim returned to the living room she noticed her husband lying naked on the floor. Later he was allowed to put on short pants. During this time one of the intruders was beating and kicking Wendell Ricard. Shortly thereafter, Patricia Ricard returned home. She was called to the Batiste apartment, and then searched for money in the presence of the other victims.
All four victims were then tied with strips of sheet and taken to the Ricard apartment. Patricia Ricard was left in the living room of that apartment, and the others were shut in the bathroom. After the assailants left, a neighbor came and freed the victims.

I
Crossland and Johnson filed a pretrial motion to suppress, alleging that physical evidence and statements seized or obtained from them in a search of Stripling's apartment were not obtained as a result of a valid arrest or search, but were "seized or obtained as the result of unlawful search without a valid warrant and without probable cause."
Both Stripling and Johnson rely upon the denial of this motion to assign error. Three arguments are made: 1) The commissioner who issued the search warrant was without power to do so since the law establishing his office was unconstitutional and invalid; 2) there was no probable cause for the issuance of the search warrant; and 3) the warrant was issued in connection with the investigation of an aggravated burglary; therefore the evidence seized could not be used in this prosecution for aggravated rape.

The Commissioner's Authority
The defense contends that Act 548 of the Legislature for the year 1974, which purported to create the office of the Commissioner, did not have a vote of two-thirds of the membership of the House of Representatives as required by Section 87 of Article VII of the Constitution of 1921. For this reason, it is said, the Act is unconstitutional and the Commissioner was without authority to issue the search warrant in question.
Courts are directed by a long line of decisions, both federal and state, and by a general proposition applicable to constitutional government, not to pass upon the constitutionality of an act of the legislature if the case can properly be decided on another ground. Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc., 479 F.2d 135 (5th Cir. 1973); State In Interest of Toler, 262 La. 557, 263 So.2d 888 (1972); Succession of Bienvenu, 106 La. 595, 31 So. 193 (1901).
A determination of the constitutionality of the Act is not essential to this decision. The commissioner issuing the warrant was at least a de facto officer acting under color of authority. Until his title to the office is attacked directly and held to be invalid, the acts of a de facto official are as valid and effectual, when they concern the public or *1301 the rights of third parties, as though he were an officer de jure and cannot be collaterally attacked. This proposition was upheld by a unanimous court in State v. Johnson, 249 La. 950, 192 So.2d 135 (1966), where the authority of the legislature was questioned because of its failure to reapportion itself every ten years as directed by Sections 2 and 3 of Article III of the Constitution of 1921. In passing upon the issue the Court declared:
"If the legislators who enacted this law were not de jure officers as defendants contend, we do not hesitate to say they were de facto public officers. Generally, for reasons of public policy, the acts of a de facto officer are valid as to third persons and the public until the officer's title to office is adjudged insufficient. In the meantime, the officer's authority may not be collaterally attacked or inquired into by third persons. Acts of de facto officers, then, are clothed with the same validity as the acts of de jure officers."

Probable Cause
In brief the State contends that the issue of probable cause is not before this Court because that issue was not presented to the trial judge, and no contemporaneous objection was made on that basis at the time of the contested ruling.
This argument is not well taken. The motion referred to specifically raised the issue of probable cause, as the quoted language in the first paragraph of this part discloses. The only evidence to be considered on such a contention is the sufficiency of the affidavit relied upon by the magistrate, and the affidavit and the warrant are in this record. When taken together the affidavit and motion present the issue.
No objection is required to a ruling on a written motion in order to permit the ruling to be considered on appeal. La.Code Crim.Pro. art. 841. Since the issue of probable cause was presented to the trial judge by the motion and affidavit, and the ruling has been assigned as error and argued in this Court, it must be considered.
The lengthy affidavit upon which the magistrate relied sought the issuance of the warrant to search Stripling's apartment on 3510 Pleasure Street, Apt. A, in New Orleans for the purpose of seizing a .38 caliber revolver and cartridges, a stereo component, a man's "Timex" wristwatch, a sawed-off shotgun, a .45 caliber automatic pistol and an unknown quantity of marijuana. The reasons for the request are quoted in footnote.[1]
*1302 The defense contends that paragraph one of the affidavit merely recites the facts of the offense. While this is correct it is not an insignificant recital. It is a sworn statement of two police officers setting forth their knowledge of pertinent facts surrounding the offense obtained by them as a result of their investigation. Their investigation revealed that the offense was perpetrated by three Negro males, armed with a sawed-off shotgun, a .45 caliber automatic pistol and a .38 caliber revolver. Recovery of a spent .45 caliber casing at the scene corroborates the use of the .45 caliber automatic.
According to the defense, paragraphs 2 and 6 of the affidavit fail to recite facts which substantiate the confidential informant's credibility. More importantly, the defense asserts, the magistrate was not given information setting forth the underlying circumstances and factual basis for the informant's belief that Stripling was the "third perpetrator of the offense."
Facts within the informant's knowledge supplied the requisite credibility and underlying circumstances. The informant knew, as the investigating officers had ascertained previously, that the suspects were Negro males and one was armed with a .38 caliber revolver at the time of the offense. In addition, the informant knew where the suspect lived and his alias, "Papa". These facts were verified by a search of the police files of Crossland. A bureau of identification photo of Crossland had been shown to a victim and he was positively identified.
The recital in the affidavit concerning Johnson is attached, and it fully satisfies the requirements of probable cause.
The informant also knew that the third suspect was armed with a .45 caliber automatic, a fact already known to the officers. In addition he knew this suspect's alias to be "Stripper" and knew that "Stripper" was then wanted for simple escape, facts verified from the police records by the affiants. He informed the officers also that Johnson was then in "Stripper's" apartment, with the objects taken at the time of the offense.
When the entire affidavit is considered, together with the information known to both officers who made the affidavit and investigated the case, plus the corroboration of the informant's story obtained from police records, the federal Fourth Amendment standards relied upon by defendants are not offended. U.S.Const. amend. IV; United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969);
*1303 Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
The affidavit submitted to the magistrate may be based entirely on hearsay, but, it must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information given by him. Factors which support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the credibility of the information reported include a) direct personal observation by the informant, or b) if the information came indirectly to the informant, the reasons in sufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectlyobtained information. State v. Paciera, 290 So.2d 681 (La.1974); State v. Linkletter, 286 So.2d 321 (La.1973).
In our view the affidavit adequately supports a finding of probable cause for the issuance of the search warrant.

Warrant Issued for Another Crime
No reason is assigned for the claimed invalidity of the warrant because it was issued upon the representation that the crime of aggravated burglary was under investigation, although the evidence seized was used in a prosecution for aggravated rape.
While the instant prosecution is based upon a charge of aggravated rape, the identical factual situation could serve to support a charge of aggravated burglary. Aside from this fact, the controlling factor to be considered in deciding the validity of a search warrant is not the prosecution in which the evidence will be used, but whether there was probable cause for its issuance and whether other legal requirements for issuing a valid search warrant have been fulfilled. Evidence properly seized when these standards are satisfied is available to the State for any legitimate purpose. La.Code Crim.Pro. art. 161.

II
A motion to quash was filed based upon the proposition that the death penalty prescribed by Article 42 of the Criminal Code was unconstitutional. The motion to quash was filed in February 1975. The motion was denied. No court had then declared Article 42 unconstitutional. To the contrary, this Court had upheld the constitutionality of the Article's death penalty provision in State v. Selman, 300 So.2d 467 (La.1974). However, the defense contention later proved to be correct after Stripling and Johnson were convicted in May of 1975 and the United States Supreme Court decided Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212, in 1976, reversing this Court's holding in State v. Selman. But when the United States Supreme Court decided Selman, the Court did not reverse the guilty verdict rendered in that case. Instead, the court followed the pattern previously established in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), by letting the conviction stand and setting aside the sentence of death.
Since the United States Supreme Court decision in Selman v. Louisiana this Court has affirmed the convictions and fashioned an appropriate sentence in lieu of the death penalty in those cases tried under the version of Article 42 declared unconstitutional in Selman v. Louisiana. These cases have been remanded for resentencing to the most serious penalty for a lesser included offensethat is, imprisonment for twenty years at hard labor. State v. Lee, 340 So.2d 180 (La.1976).
On the basis of these decisions Stripling's death penalty has been set aside and he has been resentenced to imprisonment for twenty years. For the same reason Johnson's death penalty cannot stand, and his case must be remanded to the trial court for resentencing in accordance with the rule of State v. Lee. Therefore the ruling of the trial judge supports this conviction, but Johnson's sentence must be corrected.

*1304 III
By assignment of error defendant Johnson complains that the trial judge denied his motion to suppress his pre-indictment identification. Stripling deliberately declined to join in this motion.
This assignment is primarily based upon the contention that the investigating officers presented a group of nine photographs to the victims to determine whether they could identify the offenders. No one was identified. Two days later, it is argued, the same nine photographs were again presented to the victims with a photograph of defendant Johnson added. It is claimed the addition of Johnson's photograph to a group shown only two days earlier is, in effect, the same as if only Johnson's photograph had been presented for identification. Exhibition of a single photograph for identification is a procedure which the defense proclaims to be objectionable and suggestive.
Contradictory testimony was heard on this point. Some witnesses remembered that the photographs were different at the second showing, others recalled that they were the same. In denying this motion the trial judge must have reconciled these discrepancies in favor of the State's position. Because of this factual determination the conclusion should be that no undue suggestion resulted from the procedure used by the investigating officers.
Aside from the addition of Johnson's picture to the second round of photographs, the defense asserts that a subsequent physical line-up was also unduly suggestive. Of the eight people in the physical line-up all were suspects in other cases being processed in line-ups on that day. Because of this the defense submits that suspects were used interchangeably in line-ups, and no special effort was made by the police to man the line-up with individuals of the same general description.
A photograph of the physical line-up in the record does not support the defense conclusion. While the participants are not identical they were dressed identically, they are all black, of the same general age, and they do not present physical characteristics which are noticeably suggestive or dissimilar.
Ultimately no prejudice resulted if these line-ups were somewhat suggestive. There was a well-founded independent basis for the in-court identification of Stripling and Johnson by all four of the victims present who witnessed the events surrounding the rapes. The entire event lasted an hour and forty-five minutes, perhaps two hours. During this time all four victims were in close proximity to their captors, the lights were on most of the time and the perpetrators of the crime wore no disguises or masks of any kind. The four victims did not become hysterical or overly excited during their prolonged captivity and abuse. They remained calm enough to be acutely aware of what transpired and to have impressed upon their memory the image of those responsible for their plight.
"A trial court properly admits an incourt identification if it has a source independent of the out-of-court identification. In this determination, three factors are relevant: (1) the prior acquaintance of the witness with the accused; (2) the length of time the witness observed the perpetrator before, during, and after the commission of the offense; (3) the circumstances under which the observation was made, i. e., the illumination at the scene, the witness's physical capacities, and the witness's emotional state at the time of the observation." State v. Taylor, 347 So.2d 172, 180 (La.1977).
Although all factors to be considered were not satisfied in the instant case, the circumstances referred to do indicate sufficient out-of-court compliance with some factors to provide an independent source for the in-court identification.

IV
A motion for continuance filed on May 22, 1975 on behalf of defendants was based upon the allegation that they were indigent and desired copies of transcripts of the evidentiary hearings held in *1305 connection with preliminary motions they had filed. These would cost $400, it was alleged, and they were unable to raise the full amount, requiring additional time to raise the balance needed$200. It was an abuse of discretion for the trial judge to deny this continuance, the defense argues.
It has long been recognized that the right to counsel guaranteed under the Sixth Amendment to the United States Constitution and Article I, Section 13, of the Louisiana Constitution of 1974 means the effective assistance of counsel, and effective assistance requires time for and a fair means of preparation. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).
The preliminary motions in question were heard on February 13, 1975, over three months before the trial, which took place on May 22-23, 1975. Stripling and Johnson were represented by the same attorneys at the hearings on the preliminary motions and at the trial. No special need for the transcript is cited, and inasmuch as defense counsel were present at the hearings they were informed of what transpired there. Furthermore, no plausible reason is advanced for delaying until the morning of the trial to move for this continuance. If the necessary funds could be raised at all, they could have been raised in the three months preceding the day of trial. These circumstances convincingly demonstrate that the trial judge did not abuse his discretion in denying the motion for continuance. La.Code Crim.Pro. art. 712.

V
On direct examination Officer Antoine Saacks was asked for a narrative of facts concerning his execution of the search warrant involved in this case. The relevant portion of his testimony was transcribed as follows: ". . .I knocked on the door and identified myself as a police officer. There was numerous shuffling inside the residence. At this, believing that contraband or some other evidence was being destroyed . . . ." At this point the defense objected to the expression of a belief or an opinion by the witness, and the objection was overruled.
While the officer's testimony does resemble an expression of opinion, his testimony is in fact a reasonable and natural inference to be drawn from a common occurrence. When it is drawn in this context an inference is not governed by the requirements which pertain to an expression of opinion. La.Rev.Stat. 15:463. Therefore, the testimony is admissible as an inference from the relevant fact that shuffling inside the residence followed the announcement that the police were demanding entrance. La.Rev.Stat. 15:441. See State v. Passman, 345 So.2d 874 (La.1977); State v. Glover, 340 So.2d 1346 (La.1976); State v. Lee, 340 So.2d 1339 (La.1976), cert. denied, 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260 (1977).

VI
At the trial the State produced a document purporting to be a bill of sale for a revolver allegedly taken from Wendell Ricard on the night of the crime. Officer Saacks was asked to read the serial number from the bill of sale and the defense objected that the document was hearsay, but the objection was overruled.
It is the defense contention that there had been no authentication of the alleged bill of sale as required by Section 460 of Title 15 of the Revised Statutes, which provides:
"Any document, other than an authentic act, may be proved by any one who saw it written, or by a comparison of hands, or by any one who, from his knowledge of the handwriting of the person alleged to have written the document can testify that the document produced is in the handwriting of said person."
Although the defense professes that prior to the quoted testimony there was no evidence laying a foundation for the production of the bill of sale identifying an important piece of evidence, there is this testimony in the record by Officer Saacks:
"On December 30, 1974, at the time of the burglary of Mr. Ricard, a .38 caliber R.G. was stolen. At that time he supplied *1306 us with a bill of sale, which he had the serial number indicated on it. At the time that Andrew Johnson was arrested, the weapon was confiscated and the serial number on the gun in which he was in possession of was the same as the serial number given by Mr. Ricard as stolen from him on December 30, 1974."
No objection was made to this testimony. In view of this, the later reading of the serial number from the bill of sale added nothing new to the evidence. Although the document was not properly proven as required by Section 460 the technical error in the ruling of the trial judge was not prejudicial to the substantial rights of the accused or a substantial violation of a statutory right in the context of the overwhelming evidence of guilt in this record. La.Code Crim.Pro. art. 921.
For the reasons assigned, the conviction and sentence of Eugene Stripling are affirmed; the conviction of Andrew Johnson is affirmed, but the case is remanded to the trial court for the resentencing of Andrew Johnson in keeping with the reasons assigned.
CALOGERO and DENNIS, JJ., concur.
NOTES
[1] "On, Monday, 12-30-74 Detective Sgt. A. Saacks and Detective Peter Menkiewicz initiated an investigation into an Aggravated Burglary which occurred at 3219 St. Peter St. and was reported under item # L-26686-74. Said offense being perpetrated by three (3) negro male subjects, one subject being armed with a sawed-off shotgun, one with a .45 cal. automatic pistol, and one with a chrome plated .38 cal. revolver. In perpetuating the offense, the subject with the sawed-off shotgun struck one of the victims with the weapon and said weapon discharged into the ceiling of the residence. Also during the commission of the offense, the subject with the .45 cal. automatic pistol shot one of the victims with the weapon, and a spent .45 cal. automatic casing was recovered from the scene.

"On Wednesday, 1-1-75, the investigating detectives were contacted by a reliable confidential informant, who has given information in the past which had led to arrests and convictions in Orleans Parish. The informant stated that one of the perpetrators of the offense (in fact, the one who had been armed with the .38 cal. chrome revolver) was known to him as `papa', a negro male who resided at Pauger and N. Tonti Sts. The detectives research N.O.P.D. files and found that a negro male, one, Arthur Crossland (BoI # 151-617) resides at 2940½ pauger, which is located at the intersection of Pauger and N. Tonti Sts. The files also revealed that Crossland goes by an alias of `Papa'.
"The detectives then showed a BoI photo of Crossland along with others of similar negro males to a victim of the offense. On 1-1-75 at about 3:15 pm the victim, Cynthia Ricard, positively identified the subject, Crossland as one of the perpetrators of the offense.
"On Friday, 1-3-75 the detectives were again contacted by the same reliable confidential informant as previously mentioned. At this time the informant stated that another of the perpetrators of the burglary (in fact the one armed with the sawed-off shotgun) was a negro male known to him as Andrew who resides on Foy Pk. in the St. Bernard Project. The detectives researched the N.O.P.D. files and found that one Andrew William Johnson (BoI # 134-557) resides at 1313 Foy Pk. in the St. Bernard Project. On 1-3-75 the detectives showed a BoI photo of Johnson along with others of similar negro males to the victims of the aggravated burglary. Three of the victims positively identified Johnson as the subject who had been armed with the sawed-off shotgun, on the night of the burglary.
"On Friday, 1-3-75, the detectives were again contacted by the same confidential informant, who stated that the subject `Papa' was presently in the Chef Menteur Hwy. area, and that he was presently armed with the chrome .38 cal. revolver used in the aggravated Burglary. The detectives proceeded into that area and were successful in apprehending Arthur Crossland aka `Papa'. At the time of the arrest Crossland was armed with a S. & W. .38 cal. chrome revolver.
"Early on the morning of Saturday, 1-4-75, The detectives were again contacted by the same confidential informant who stated that the third perpetrator of the offense, the one who was armed with the .45 cal. automatic pistol, was a subject known to him as Eugene `Stripper', and that he, `Stripper' was presently wanted Simple Escape. The informant further stated that the subject `Stripper' and the subject Andrew were presently at 3510 Pleasure St. Apt. # A. and that they had the weapons used in the commission of the Aggravated Burglary along with the property taken in the aforementioned offense in the residence with them. The information also stated that the subjects were also in possession of an unknown quantity of marijuana. The undersigned researched the files of the N.O. Police Dept. and found that one Eugene Lewis (B of I # 141 988) who uses the alias of Stripper was presently wanted by the N.O.P.D. for Simple Escape. Officers were able to obtain a B of I photo of Lewis and again contacted the informant. The informant was allowed to view the photograph and he positively identified the subject known to him as Eugene Stripper. Due to the late hour officers did not contact the victims for a photograph identification."